

## J. KENNETH BLACKWELL
### Ohio Secretary of State

180 E. Broad Street, 16th Floor, Columbus OH 43215
614.466.2655 / Toll Free: 877.767.6446 / Fax: 614.644.0649
e-mail: blackwell@sos.state.oh.us
www.sos.state.oh.us

**ADVISORY NO. 2006-05**
June 5, 2006

To:     All County Boards of Elections
        Members, Directors and Deputy Directors

# Amended Substitute House Bill No. 3:

## Changes in State Laws Governing Election Administration & Procedures

Amended Substitute House Bill No. 3 was signed by the Governor and filed with this office on January 31, 2006. The act makes numerous changes to many statutes in the Election Law (Title XXXV) and to other election-related statutes throughout the Revised Code. These changes modify and/or create provisions that govern election administration and procedures. While some of the changes are minor, many are substantial. This Advisory addresses notable changes under the following topic headings:

I.      Voter Registration
II.     Voting
III.    Elections Administration
IV.     State Issue Process
V.      Other Significant Changes

Please note that changes affecting the campaign finance reporting laws are not covered in this advisory. Those changes were addressed previously in a memorandum issued to all boards of elections on April 10, 2006. For assistance on campaign finance related material, please contact the Campaign Finance Division at (614) 466-3111.

As this office advised the boards of elections in Advisory 2006-01, some provisions of Am. Sub. H.B. 3 became effective on May 2, 2006, but many others are effective on June 1, 2006.

The many changes wrought by Am. Sub. H.B. 3 required a general overhauling of the forms prescribed by this office. Some of the revised forms have been provided to the boards of elections previously under separate cover. The forms still being revised will be made available to the boards via the Extranet as they are completed. If any board should have questions or concerns about any revised form, please do not hesitate to contact the Elections Division at (614) 466-2585.

An electronic version of the act is available at
http://www.legislature.state.oh.us/BillText126/126_HB_3_EN_N.html.

# I. Voter Registration – R.C. 3503.19

## A. Application Process – Requirements and Restrictions

1. **Registration by the individual named in the application – R.C. 3503.19(A) and (B)**

   An individual may return his or her own completed voter registration form in person or by U.S. Mail to any of the following public offices:
   - Any county board of elections,
   - Secretary of state,
   - Any designated agency that provides public assistance or disability programs,
   - County treasurer,
   - Any public high school or vocational school, or
   - Any public library.

   The applicant may also may return the applicant's completed voter registration form in person to the office of the registrar or any deputy registrar of the Bureau of Motor Vehicles.

2. **Registration via a non-compensated individual – R.C. 3503.19(B)(2)(b)**

   Anyone returning the completed registration form on behalf of another person must return the completed application to any board of elections office or the office of the secretary of state.

3. **Registration via a compensated individual – R.C. 3503.19(B)(2)(c), 3503.29**

   Am. Sub H.B 3 enacts new provisions governing persons who are compensated for registering other people to vote. In accordance with R.C. 3503.29(C), in each year that an individual receives or expects to receive compensation for registering any person to vote, that individual must, *before* registering any voter, complete the following three steps:
   (1) Register with the secretary of state at www.sos.state.oh.us/electionsvoter/training.aspx.
   (2) Complete the online voter registration training program offered by the secretary of state's office.
   (3) Sign an affirmation that includes the compensated individual's name, permanent address, date of birth, the name of each county in which the individual expects to register voters, statement of completion of the required training program and statement that the compensated individual will follow all applicable laws of this state while registering voters.

   The person being compensated to register voters must:
   - Return an applicant's completed voter registration form directly to the office of a county board of elections or the secretary of state and shall not, under penalty of law, return the completed form to any other person, group, organization, office or entity.
   - Submit the completed voter registration form(s) not later than:
     i. The 10th day after the applicant has completed the form, or before the 30th day before the election, whichever is earlier; or
     ii. If the compensated individual receives the form on the 31st day before the election, the compensated individual must submit the form within 10 days.
   - Submit a single copy of the compensated individual's completed and signed affirmation (referenced in step (3), above) with each set of voter registration forms the compensated individual returns to a county board of elections.

4. **Boards must take certain action by statutory deadline – R.C. 3503.19(B)(2)(d)**

New section 3503.19(B)(2)(d) codifies deadlines by which the secretary of state or a board of elections must process voter registration applications it receives.

If a board of elections or the office of the secretary of state receives a registration form under division (B)(2)(b) or (c) of this section (i.e., the board receives the application, presumably in person, from either a person other than the applicant or a person who receives compensation for registering voters):

- Before the 30th day before an election: The board or the office of the secretary of state shall forward the registration to the board of elections of the county in which the applicant is seeking to register to vote within 10 days after receiving the application.

- After the 30th day before an election: The board or the office of the secretary of state shall forward the registration to the board of elections of the county in which the applicant is seeking to register to vote within 30 days after that election.

The language of this new provision does not negate the language of the other provisions of Ohio's election laws governing voter registration applications that are submitted via the U.S. Mail to the boards of elections, the secretary of state, designated agencies and other public offices having statutorily mandated voter registration duties.

## 5. Notices from County Board of Elections – R.C. 3503.19(C)

### a. Acknowledgement notice for valid registration – R.C. 3503.19(C)(1)

Within 20 business days after receiving a properly completed voter registration application, unless the application is received during the 30 days immediately preceding an election, the county board of elections must register the applicant to vote. The board then must promptly notify the applicant by nonforwardable mail of the applicant's precinct, polling location and the identification requirements for voting. If the mail is returned to the board, it shall investigate and cause the notification to be delivered to the correct address.

### b. Acknowledgement notice returned to board as undeliverable – R.C. 3503.19(C)(2) and (3)

If, after investigating as required under R.C. 3503.19(C)(1), the board is unable to verify the voter's correct address, it shall cause the voter's name in the official registration list and in the poll list or signature pollbook to be marked to indicate that the voter's notification was returned to the board.

At the first election at which a voter whose name has been so marked appears to vote, the voter shall be required to provide identification to the election officials and to vote by provisional ballot under R.C. 3505.181. If the provisional ballot is counted pursuant to R.C. 3505.183(B)(3), the board shall correct that voter's registration, if needed, and shall remove the indication that the voter's notification was returned from that voter's name on the official registration list and on the poll list or signature pollbook. If the provisional ballot is not counted pursuant to R.C. 3505.183(B)(4)(a)(i), (v), or (vi), the voter's registration must be canceled. The board must notify the voter of the cancellation via U.S. mail.

If an acknowledgement notice of an otherwise valid registration application is sent by nonforwardable mail and is returned undelivered, the person shall be registered as provided in R.C. 3503.19 (C)(2) and sent a confirmation notice by forwardable mail. If the person fails to respond to the confirmation notice, update the person's registration,

or vote by provisional ballot as provided in R.C. 3503.19(C)(2) in any election during the period of two federal elections subsequent to the mailing of the confirmation notice, the person's registration shall be canceled.

## B. Attorney in Fact – R.C. 3503.382

### 1. Generally

New section R.C. 3501.382 allows a registered voter who, by reason of disability, is *unable to physically sign* the voter's name as a candidate, signer, or circulator on a declaration of candidacy and petition, nominating petition, other petition, or other election-related document to authorize a legally competent Ohio resident who is 18 years of age or older as an "attorney in fact," to sign the voter's name to the petition or other election document on the voter's behalf, *at the voter's direction* and *in the voter's presence*. Am. Sub. H.B 3 amends many elections-related statutes to incorporate this new provision; *for example*, R.C. 303.12(H), 519.12(H), 3375.03, 3501.38(D), (E)(1), (F), and (H), 3501.382(A), (C), and (D), 3503.14(C), 3505.18(B), 3513.07, 3513.09, 3513.261, and 3519.05.

The act specifies that a voter is "unable to physically sign" election documents if the voter cannot comply with certain signature or legal marks statutory rules; for example, generally (subject to two exceptions), "signing" means by "that person's written, *cursive-style* legal mark written in that person's *own* hand" (R.C. 3501.011--not in the act). However, R.C. 3501.382(F) further provides that a voter is not "unable to physically sign" election documents if the voter is able to comply with the aforementioned signature or legal mark rules through *reasonable accommodation*, including the use of assistive technology or augmentative devices.

The act specifically exempts the attorney in fact from other prohibitions against a person signing a name other than the person's own on a petition or other election document; *see* R.C. 3599.13(A)(3) and 3599.14(A)(6).

### 2. Appointment processes

#### a. Notarized form - R.C. 3501.382(A)(1)(a):

The first alternative process described in the act allows a disabled voter to authorize an attorney in fact by filing with the board of elections of the voter's county of residence a *notarized form* that includes or has attached, all of the following:

(1) The voter's name,

(2) An attestation of the voter that the voter, by reason of disability, is unable to physically sign petitions or other election documents and that the voter desires the attorney in fact to sign them on the voter's behalf, at the voter's direction and in the voter's presence,

(3) The attorney in fact's name, residence address, date of birth, and, if applicable, Ohio Supreme Court registration number and a photocopy of the attorney in fact's driver's license or state identification card, and

(4) The form of the signature that the attorney in fact will use in signing the petitions or other election documents.

R.C. 3501.382(A)(2) provides that only a notary public satisfying the qualifications for commission as a notary public in Ohio and actually commissioned in Ohio may perform notarial acts with respect to this power of attorney form. The act requires the notary public involved in this appointment process to acknowledge that the disabled voter orally affirmed in the presence of the notary public items (1), (2), and (3) of the power of

attorney form. Further, it prohibits a notary public from performing any notarial acts with respect to such a power of attorney form unless the voter first gives that oral affirmation.

### b. Non-notarized Form - R.C. 3501.382(A)(1)(b):

This alternative process allows a disabled voter to authorize an attorney in fact by filing with the board of elections of the voter's county of residence a *form* that includes, or has attached, the same four pieces of information listed for the first process, discussed immediately above. Although this form need not be notarized, it must both:

   (1)   Include a specified *physician's attestation*, and

   (2)   Be *acknowledged before an elections official*.

## 3. Revocation

R.C. 3501.382(E) requires the secretary of state to prescribe a form "to revoke such a power of attorney." However, the statute is silent as to any specific revocation process. Presumably, the elector's delivery of a properly executed revocation form to the board of elections with which was filed a form under R.C. 3501.382(A)(1)(a) or (b) will suffice to revoke that earlier appointment.

## 4. Forms

R.C. 3501.382(E) requires the secretary of state to prescribe the form and content of distinct forms for granting a power of attorney and revoking such a power of attorney.

R.C. 3501.382(B) requires a board of elections that receives a power of attorney form under this section to:

- Use the attorney in fact's signature for the purpose of verifying the voter's signature on petitions and other election documents and
- Cause the poll list or signature pollbook for the relevant precinct to identify the voter as having so authorized an attorney in fact.

## C. Voter Registration Brochure – R.C. 3503.28

The act creates a new section of law, R.C. 3503.28, which requires state and county election officials to make available information about the voter registration process.

R.C. 3503.28(A) requires the secretary of state to develop an information brochure which must include, but is not limited to, the following information:

- Deadline for the applicant who is returning his or her own completed registration form.
- Deadline if the person returning the applicant's completed registration form is being compensated for registering voters.
- Locations to which a person may return an applicant's completed registration form.
- Location to which a person being compensated to register voters may return an applicant's completed registration form.
- The registration and affirmation requirements applicable to persons being compensated for registering voters under R.C. 3503.29.
- The notice that voters must bring appropriate proof of identification to the polls.

In accordance with R.C. 3503.28(C), the secretary of state's brochure, *Voter Registration Instructions: Including for Compensated Registrars*, is available on the secretary of state's web site (under Elections Publications) for review and downloading.

---

R.C. 3503.28(B) requires that a board of elections, designated agency, public high school, public vocational school, public library, office of a county treasurer, or deputy registrar of motor vehicles must distribute a copy of the brochure developed under R.C. 3503.28(A) to any person – except any person requesting voter registration forms in connection with the person's employment with any of those public offices, as provided in R.C. 3503.28(D) – who requests three or more voter registration forms at one time.

## D. Voter Information Guide

Given the many changes in the voting process that become effective on June 1, 2006, the secretary of state's office has revised and reissued the *Voter Information Guide* for 2006. The new Guide is available on our website under Elections Publications.

## E. Maintaining the Voter Registration Database

Am. Sub. H.B. 3 enacts R.C. 3503.15, which requires the secretary of state to "establish and maintain a statewide voter registration database that shall be continuously available to each board of elections and to other agencies as authorized by law." The act provides that the statewide voter registration database shall be the official list of registered voters for all elections conducted in Ohio (R.C. 3503.15(B)).

R.C. 3503.15(E) requires a board of elections to promptly purge a voter's registration information from the statewide database in accordance with the rules adopted by the secretary of state after the voter's registration in cancelled under R.C. 3503.21.

Additionally, other new provisions require the secretary of state to:
- Establish a statewide voter registration database that meets the requirements of federal law, and specifies certain additional requirements with which that database must comply (R.C. 3501.05(V), 3503.13(A), and 3503.15(A), (C), and (D)).
- Provide training in the operation of the statewide voter registration database to each board of elections and to individuals authorized to update or modify the database (R.C. 3501.05(V) and 3503.15(F)).
- Adopt rules regarding the process for (a) updating, and identifying the persons authorized to update the statewide voter registration database and (b) annually auditing the information in the database (R.C. 3503.15(D)).
- Make the statewide voter registration database available on the secretary of state's web site effective June 1, 2006 (R.C. 3503.15(G)(1) and Section 8 of the act).
- Make available online *during the 30 days prior to an election* a web site interface that allows a voter to search for the polling location at which the voter may cast a ballot, and requires boards of elections to provide to the secretary of state, during that time and for that purpose, updated locations of precinct polling places within one business day (R.C. 3503.15(G)(1)(b), (2), and (3)).

R.C. 3503.23 as amended by the act requires a board of elections to prepare a complete and official registration list, arranged in alphabetical order, for each precinct from the statewide voter registration database established under R.C. 3503.15 (rather than from the board's registration cards) 14 days (rather than 15 days) before an election.

## F. Board of elections must cancel certain voter registrations within 180 days - R.C. 3503.21(E)

New division (E) of existing section R.C. 3503.21 specifies that a board of elections must cancel within a prescribed time the voter registration of an elector described in either:

---

- R.C. 3503.21(A)(6) [an elector who, having been mailed a confirmation notice, fails either to respond to that notice and vote, or to update the elector's registration and vote, and least once during a period of four consecutive years, including two general federal elections], or
- R.C. 3503.21(B)(2) [an elector who, having been identified as having moved outside his or her current county of registration and having been sent a confirmation notice, fails to respond to the confirmation notice or otherwise update the registration and fails to vote in any election during the period of two federal elections subsequent to the mailing of the confirmation notice].

The new provision requires the board to cancel the registration of either of these two types of electors on or before one of the following two dates, whichever is later:

(1) 120 days after the date of the second general federal election in which the elector fails to vote, or

(2) 120 days after the expiration of the four-year period in which the elector fails to vote or respond to a confirmation notice.

## G. Voter Information Available Online – R.C. 3503.15(G)

### 1. Voter registration and polling place information

New section 3503.15(G)(1) states:

"(1) The statewide voter registration database established under this section shall be made available on a web site of the office of the secretary of state as follows:

(a) Except as otherwise provided in division (G)(1)(b) of this section only the following information from the statewide voter registration database regarding a registered voter shall be made available on the web site:

(i) The voter's name;
(ii) The voter's address;
(iii) The voter's precinct number;
(iv) The voter's voting history.

(b) During the thirty days before the day of a primary or general election, the web site interface of the statewide voter registration database shall permit a voter to search for the polling location at which that voter may cast a ballot."

### 2. Updates to precinct polling place information

New section 3503.15(G)(3) states that, during the 30 days before a primary or general election, not later than one business day after receiving a notification from a county pursuant to R.C. 3503.15(G)(2) that the location of a precinct polling place has changed, the secretary of state shall update that information on the secretary of state's web site for the purpose of R.C. 3503.15(G)(1)(b).

# II. Voting

## A. Regular Ballot

Anyone who has the qualifications to vote in Ohio, is eligible to vote in the election, and whose voter registration is current may vote a regular ballot on election day at the voter's designated precinct polling location.

R.C. 3505.18 as amended requires each elector, upon appearing at the polling place to vote, to announce his or her full name and current address and provide proof of the elector's identity. The form of identification that may be used includes the voter's current and valid photo identification card, military identification, copy of utility bill, bank statement, paycheck, government check, or government document* showing the voter's name and current address.

> *The act specifies that an elector cannot use as proof of identification a notice that the board of elections mailed to voter under R.C. 3501.19 or 3503.19.

If an elector does not have, or fails or refuses to provide, the required proof of identity, that elector may cast a provisional ballot under R.C. 3505.181, discussed below.

After the elector has announced his or her full name and address and provided acceptable proof of identity, the elector shall sign, or make his or her mark or – if appropriate – have his or her attorney in fact sign the elector's name, in the poll list or signature pollbook. The validity of an attorney in fact's signature on behalf of an elector will be determined in accordance with R.C. 3501.382.

## B. Absentee Ballot

Any qualified Ohio elector who is registered to vote at the elector's correct voting residence address may request an absentee ballot without stating a reason. The act:
- Adds the military ID as another document that may be used by an elector as proof of identity;
- Specifies that an elector cannot use as proof of identification a notice that the board of elections mailed to voter under R.C. 3501.19 or 3503.19; and
- Specifies the reasons for which an absentee ballot must be rejected. *See* R.C. 3509.09, 3511.09 and 3511.13.

## C. Provisional Ballot

The act codifies additional other reasons for voting a provisional ballot, in addition to a change of address. These other reasons include the following:

1. Change of name

   In a change from prior law, an Ohio voter who changes his or her name – regardless of whether the elector moves – but does not submit a change of name to election officials by the 29th day before the election must vote a provisional ballot:
   - During the 28 days immediately before the election, go to the county board of elections office or designated site, submit a proper change of name, complete a provisional affirmation statement and vote a provisional ballot.
   - On election day, go to one of the following three places: the voter's designated precinct polling place, the board of elections office, or a site designated by that board of elections; submit a proper change of name, complete a provisional affirmation statement and vote a provisional ballot.

2. The elector's name does not appear on the official poll list for an election.

3. An election official either asserts that the elector is not eligible to vote, or is unable to determine the elector's eligibility.

4. The elector is unable or declines to provide the required proof of identity.

5. The elector's name appears on the poll list or signature book as having requested an absentee ballot.

---

Secretary of State Advisory 2006-05: Am. Sub. H.B. 3

6. The elector's name is marked on the poll list or signature book with a notation that registration mailings have been returned as undeliverable.

7. A hearing on a challenge to the elector's eligibility has been postponed until after election day.

8. The elector's signature, in the opinion of the precinct officers, does not match the signature on the elector's registration form.

9. The elector's eligibility to cast a ballot has been challenged by the precinct officers, and the elector refuses to make the required statement.

A provisional voter will complete the appropriate provisional voter affirmation statements at the elector's assigned precinct polling place. The precinct election officials then will complete any statements they are required to complete and issue a provisional ballot to the elector.

## D. Providing Proof of Identity Within 10 Days After the Election

Before a provisional ballot can be included in the official count of an election, the board of elections must confirm the voter's eligibility to cast the ballot, as well as the validity of the ballot that was cast. In some cases, a provisional voter can establish his or her eligibility to vote by appearing in person at the board of elections office within 10 days immediately *after* election day and completing the appropriate steps:

1. If the elector cast a provisional ballot because the elector had – but could not provide to election officials at the time of voting – acceptable proof of the elector's identity or the last four digits of the elector's Social Security number, the elector must provide to the board of the elections one of the following:

    (a) Acceptable proof of the elector's identity in the form of a current and valid photo identification, or a military identification that shows the elector's name and current address, or a copy of a current utility bill, bank statement, government check, paycheck, or other government document (but not a voter registration notification mailed by a board of elections) that shows the elector's name and current address; or

    (b) The last four digits of the elector's Social Security number.

2. If the elector cast a provisional ballot because, at the time the elector voted, the elector had – but declined to provide – an acceptable form of identification or the last four digits of the elector's Social Security number, and the elector declined to execute the written affirmation statement, the elector must provide to the board of the elections one of the following:

    (a) Acceptable proof of the elector's identity in the form of a current and valid photo identification, or a military identification that shows the elector's name and current address, or a copy of a current utility bill, bank statement, government check, paycheck, or other government document (but not a voter registration notification mailed by a board of elections) that shows the elector's name and current address; or

    (b) The last four digits of the elector's Social Security number.

3. If the elector cast a provisional ballot because, at the time of voting, the elector did not have any acceptable form of identification or a Social Security number, and the elector declined to execute the written affirmation statement, the elector must do one of the following:

    (a) Provide to the board acceptable proof of the elector's identity in the form of a current and valid photo identification, or a military identification that shows the elector's name and current address, or a copy of a current utility bill, bank statement, government check, paycheck, or other government document (but not a voter

registration notification mailed by a board of elections) that shows the elector's name and current address; or

(b) Provide to the board the last four digits of the elector's Social Security number; or

(c) Complete the affirmation statement.

4. If the elector cast a provisional ballot because the elector's right to vote was challenged at the polling place under R.C. 3505.20, and the election officials either determined that the elector was ineligible to vote, or were unable to determine the elector's eligibility, the elector must provide any identification or other documentation required to resolve the challenge.

# III. Elections Administration

## A. Notice of Elections to be Mailed to Voters through 2009 – R.C. 3501.19

### 1. Required mailings – R.C. 3501.19(A), (B) and (D)

Division (A) requires a board of elections to send a written notice to each registered elector 60 days before the following elections:

| | |
|---|---|
| • August 2006 special election | (Notice mailing deadline: June 9, 2006) |
| • 2006 general election | (Notice mailing deadline: September 8, 2006) |
| • 2008 primary election | (Notice mailing deadline: January 4, 2008) |
| • 2008 general election | (Notice mailing deadline: September 5, 2008) |

Pursuant to R.C. 3501.19(B), the notice must contain the day of the election and of the location of the polling place for the precinct in which the elector is registered to vote. This notice must be sent by nonforwardable mail and must include the following statement, printed in bold type:

**Voters must bring identification to the polls in order to verify identity. Identification may include a current and valid photo identification, a military identification that shows the voter's name and current address, or a copy of a current utility bill, bank statement, government check, paycheck, or other government document, other than this reminder or a voter registration notification, that shows the voter's name and current address. Voters who do not provide one of these documents will still be able to vote by providing the last four digits of the voter's Social Security number and by casting a provisional ballot. Voters who do not have any of the above forms of identification, including a Social Security number, will still be able to vote by signing an affirmation swearing to the voter's identity under penalty of election falsification and by casting a provisional ballot.**

*Exception:* R.C. 3501.19(D) states that a board is *not* required to send a notice to anyone who registered to vote within 30 days prior to the applicable *notice mailing date.*

Am. Sub. H.B. 3 specifies that R.C. 3501.19 is repealed effective January 1, 2009.

### 2. Returned mailings – R.C. 3501.19(C)

If a notice sent pursuant to R.C. 3501.19(A) is returned to the board as being undeliverable, the board must both:

* Mark the voter's name in the official registration list and in the pollbook to indicate "Notice returned to board of elections," and

* Require a voter whose name has been so marked to provide identification at the first election at which the voter appears to vote.

A voter whose name has been so marked is allowed to cast *a regular ballot* upon producing a current and valid photo identification, a military identification that shows the voter's name and current address, or a copy of a current utility bill, bank statement, government check, paycheck, or other government document, other than a notice of an election or a notice of voter registration mailed by a board of elections.

Alternatively, in accordance with both R.C. 3501.19(C) and R.C. 3505.18(A)(4), a voter whose name has been so marked shall be permitted to cast *a provisional ballot* at the election if the voter complies with any of the following procedures:

1. Provides a photo identification that does not contain the voter's current address,
2. Provides the last four digits of the voter's Social Security number,
3. Is unable to provide any of the required forms of identification,
4. Refuses to provide any of the required forms of identification, <u>or</u>
5. Executes an affirmation that indicates that the voter does not have any of the specified forms of identification and cannot provide the last four digits of a Social Security number because the voter does not have a Social Security number.

### 3. Notice mailed under R.C. 3501.19 or 3503.19 is not a "government document" for voter identification purposes – R.C. 3501.19(E) and 3505.18(A)(1)

A voter cannot use, and election officials shall not accept, a notice that a board of elections mailed to the voter under either R.C. 3501.19(A) or 3503.19 as a government document for the purpose of providing identification under the various sections Title XXXV.

## B. Petition Circulators - R.C. 3503.06; R.C. 2961.01 and 2967.17

### 1. Circulators of initiative and referendum petitions must be Ohio residents

R.C. 3503.06 as amended is divided into divisions (A), (B) and (C).

- New division (A) differs from the prior version in that "initiative" and "referendum" petitions are deleted from the list of petitions that require the circulators to be Ohio electors.
- New division (B) applies only to circulators of initiative and referendum petitions. It requires that a circulator of an initiative or referendum petition must be an Ohio resident and specifies the rules for determining residency.
- New division (C) states: "No person shall be entitled to sign any initiative or referendum petition unless the person is registered as an elector and will have resided in the county and precinct where the person is registered for at least thirty days at the time of the next election."

### 2. Felons prohibited from circulating any petition

Changes in R.C. 2961.01 and 2967.17 permanently bar any person who has been convicted of a felony under the laws of this state, another state or the United States from circulating any declaration of candidacy and petition, or nominating, initiative, referendum or recall petition.

## C. Duplicate Candidacy Prohibitions

The act amends numerous sections of Chapter 3513. to prohibit a person from being a candidate for federal office and a state or county office at the same election. The affected statutes are R.C. 3513.04, 3513.041, 3513.05, 3513.052, 3513.257, 3513.259, and 3513.261.

The act also amends R.C. 3513.052(C), (D) and (E) to require that a person who seeks nomination or election to a federal office and a state or county office at the same election must be disqualified as a candidate for each office that is not a federal office.

## D. Deadline for Certifying Local Liquor Option Petitions

Am. Sub. H.B. 3 amends several sections of Title XLIII (43) to change the date by which a board of elections must certify the sufficiency and validity of a local liquor option petition from the 66th day before the election to the 68th day before the election.

## E. Candidate Withdrawal Deadline for Removing Name form Ballot – R.C. 3513.30

A candidate still may withdraw his or her candidacy anytime before the polls open, but whether or not a board of elections must reprint ballots to remove that candidate's name depends on when that candidate's notice of withdrawal is received by the appropriate election officials:

### 1. Candidates other than presidential candidates – R.C. 3513.30(E)

a. When a person withdraws his or her candidacy under R.C. 3513.30(B) or (D) on or before the 60th before the primary election – or, if the election is a presidential primary election, on or before the 45th day before the presidential primary election – the board of elections shall remove the name of the withdrawn candidate from the ballots as directed by the secretary of state.

b. When a person withdraws his or candidacy under R.C. 3513.30(B) or (D) after the 60th day before the primary election – or, if the election is a presidential primary election, after the 45th day before the presidential primary election – a the board of elections shall not remove the name of the withdrawn candidate from the ballots. The board of elections shall post a notice at each polling place on the day of the primary election, and shall enclose with each absentee ballot issued after the candidate withdraws, a notice that votes for the withdrawn candidate will be void and will not be counted.

### 2. Presidential candidates – partisan primary - R.C. 3513.30(C)

a. If the written withdrawal of a person who is the first choice for U.S. president by a candidate for delegate or alternate to a national convention of a political party is delivered to the secretary of state on or before the 45th day before the presidential primary election, the boards of elections shall remove both the name of the withdrawn candidates from the ballots as directed by the secretary of state.

b. If the withdrawal is delivered to the secretary of state after the 45th before the presidential primary election, the board of elections shall not remove the name of the withdrawn candidate from the ballots. The board of elections shall post a notice at each polling location on the day of the primary election, and shall enclose with each absentee ballot issued after the candidate withdraws, a notice that votes for the withdrawn candidate will be void and will not be counted.

## F. Write-in Deadlines Moved Up

R.C. 3513.041 as amended advances the filing and protest deadlines for write-in candidates. The filing deadline changes to 62 days (from the previous 50 days) before the election; the protest deadline changes to 57 days (from the previous 45 days) before the election.

## G. Advertising of Local Questions and Issues

Am. Sub. H.B. 3 reduces the advertising requirements for a wide range of local questions and issues, including those provided for in Titles III (*Counties*), V (*Townships*), VII (*Municipal Corporations*), Title XXXIII (*Education and Libraries*), Title XLV (*Motor Vehicles*), Title LVII (*Taxation*) and Title LXI (*Water Supply/Sanitation Districts*). Now, a notice of specified elections must be published in one or more qualifying newspapers "once a week for two consecutive weeks prior to the election."

If the board of elections operates and maintains a website, the board shall post notice of the election on its website for 30 days prior to the election.

## H. Challenges of Voters

### 1. Challenge to the precinct list – R.C. 3503.24

R.C. 3503.24(A) as amended moves the deadline for challenging voters based on the precinct list from 11 days to 20 days before an election, after which no one, other than an election official, may challenge the elector's right to vote.

The procedures for deciding challenges are the same procedures used for deciding applications for correction under R.C. 3503.24, discussed above. As in the case of an application, a board must inspect its records promptly after receiving a challenge. The law permits pre-election challenges to be decided from the board's records without a hearing. Should a board be unable to decide the challenge based solely on the board's records, then it must hold a hearing. Generally, the hearing will be held before the election. If the board holds a pre-hearing, it must complete the hearing and make a decision as to the challenge within 10 days after receiving the challenge.

However, R.C. 3503.24(D) permits certain challenges to be decided after the election. If a challenge for which a hearing is required is filed less than 30 days before an election, the board of elections has discretionary authority to postpone that hearing, and any notifications of that hearing, until after the day of the election. A hearing postponed under this division must be conducted not later than 10 days after the election.

Pending the post-election hearing, the elector whose application is to be decided shall be permitted to vote a provisional ballot under R.C. 3505.181. The validity of that voter's provisional ballot will be determined in accordance with R.C. 3505.183. If the ballot is valid, it will be counted if the post-election hearing results in the elector's inclusion in the official registration list.

### 2. Challenge "at any time" eliminated – R.C. 3505.19

Am. Sub. H.B. 3 now imposes a deadline for challenging an elector's right to vote in an election under R.C. 3505.19. (The statute previously stated that a challenge could be brought under this section "at any time.") The challenge must be filed no later than the 20th day ("prior to the nineteenth day") before the election, after which only election officials may challenge the elector's eligibility to vote.

In determining whether to sustain or deny the challenge, the board must follow the procedures set forth in R.C. 3503.24(C), discussed above. If the board sustains the challenge, the director must (1) indicate that finding on the elector's registration cards and (2) give written notice of that finding to the precinct judges before the election.

If the challenged person then offers to vote at the election, the precinct judges will examine the challenged person as in the case of an original challenge. If the challenged person establishes, to the satisfaction of the precinct judges, that the disabilities that led to the board's finding have been removed and that the person has a right to vote, the precinct judges shall allow that person to vote.

The secretary of state has prescribed Form 259 for use under R.C. 3505.19.

3. **Only election officials may challenge a voter's eligibility on election day – R.C. 3505.20, 3505.21, 3505.22, 3505.25 and 3513.19**

Am. Sub. H.B. 3 creates a significant change in Ohio's election process by eliminating the ability of anyone, other than election officials, to challenge an elector's right to vote on the day of an election.

## I. Application to Correct Precinct Voting List – R.C. 3503.24

R.C. 3503.24(A) as amended changes the deadline for filing an application for correction of any precinct registration list to 20 days (from the previous 11 days) before an election, after which only election officials may challenge an elector's right to vote.

R.C. 3503.24(B) as amended now generally requires a board, on receiving an application under division (A), to review promptly the board's records. If the board is able to determine that an application should be granted or denied solely on the basis of the board's records, the board immediately shall vote to grant or deny that application. However, if the board is unable to determine whether an application should be granted or denied solely on the basis of the board's records, the board must hold a hearing, and decide the application, no later than 10 days after receiving the application.

However, R.C. 3503.24(D) permits certain applications to be decided after the election. If an application for which a hearing is required is filed less than 30 days before an election, the board has discretionary authority to postpone that hearing, and any notifications of that hearing, until after the day of the election. A hearing postponed under this division must be conducted not later than 10 days after the election.

Pending the post-election hearing, the name of the elector shall be marked in the official registration list and in the poll list or signature pollbook for that elector's precinct to indicate that the elector's registration is subject to challenge. The challenged elector shall be permitted to vote a provisional ballot under R.C. 3505.181. The validity of that voter's provisional ballot will be determined in accordance with R.C. 3505.183. If the ballot is valid, it will be counted if the post-election hearing results in the elector's inclusion in the official registration list.

## J. No Campaigning Near Line of Voters – R.C. 3501.35(A)(1) and (A)(3)

R.C. 3501.35 as amended expands the neutral area outside polling places beyond the 100-foot mark. It prohibits a person from loitering, congregating, or engaging in election campaigning, or giving, tendering, or exhibiting any ballot or ticket to any person, within 10 feet of any elector waiting to vote, if the line of waiting electors extends past the small United States flags placed 100 feet from the polling place. The prohibitions also apply within the area between the polling place and the flags placed on the thoroughfares and walkways leading to the polling place.

## K. Observers – R.C. 3505.20, 3505.21, 3506.13 and 3513.19

Am. Sub. H.B. 3 replaces "challengers" and "witnesses" with "observers" in the elections process. Essentially, an observer serves the same functions previously performed by a challengers and witnesses, *except* for challenging voters at a polling place (now the exclusive responsibility of election officials).

The act provides that a political party, group of five or more candidates, and a recognized ballot issue committee may appoint a qualified elector to serve as an "observer" at the board of elections office or a precinct (as distinguished from a "precinct polling place") during the casting and counting of ballots.

An observer appointed by a political party or group of candidates to serve at the board of elections office may observe at both:
- the board office and
- any precinct in the county.

The act imposes new deadlines for any committee seeking to be recognized as *the* committee advocating or opposing a ballot measure that is entitled to appoint observers under R.C. 3505.21. A committee now must file its petition with the appropriate board of elections not later than 20 days (from the previous 11 days) before the election. If more than one committee files a petition claiming to advocate the same position on the same ballot measure, the board of elections must decide and give notice not later than 12 days (from the previous 3 days) before the election which committee is recognized to appoint observers.

## L. Voting Machines, Marking Devices and Tabulation Equipment

Am. Sub. H.B. 3 enacts the following changes relative to the laws governing voting machines, marking devices and tabulating equipment:

1. **R.C. 3501.11(I)**: Requires each board of elections to conduct a full vote of the board during a public session of the board on the allocation and distribution of voting machines, marking devices, and automatic tabulating equipment for each precinct in the county.

2. **R.C. 3506.01(C)**: Expands the definition of "automatic tabulating equipment" to include, in addition to machines and interconnected or interrelated machines, "electronic devices" and interconnected or interrelated "electronic devices" that automatically examine and count votes recorded on ballots.

3. **R.C. 3506.18(C)**: Specifies that a VVPAT must be treated as are other ballots for purposes of the Public Records Law, and requires it to be retained in accordance with the county records retention schedule established under the County Records Commission Law after the relevant time period prescribed for its preservation under the Election Law (similar to paper ballots) or as ordered by the secretary of state or a court of competent jurisdiction.

4. **R.C. 3506.18(D)**: Provides that, if a VVPAT is made available to the public, any information on it that identifies the particular DRE voting machine that produced it must be redacted.

5. **R.C. 3506.20**: Defines "ballots on demand voting system" to mean "a system that utilizes ballots printed as needed by election officials at the board of elections for distribution to electors, either in person or by mail," and prohibits a board of elections from using a ballot on demand system unless each ballot the system prints includes a tracking number.

6. **R.C. 3506.21**: Defines "optical scan ballots" to mean "a ballot that is marked by using a specified writing instrument to fill in a designated position to record a voter's candidate,

question, or issue choice and that can be scanned and electronically read in order to tabulate the vote," and specifies the types of marks on those ballots that constitute valid votes.

7. **R.C. 3506.05(H)(3)(a)(vi) and (vii):** Requires the secretary of state's standards, adopted by rule, for the certification of DRE voting machines with a VVPAT to include specified requirements regarding the VVPAT's "content" information, depending on the type of ballot:

   (a) Office-type ballots: the name of each candidate selected by the voter.

   (b) Questions and issues ballots: the title of the question or issue, the name of the entity that placed the question or issue on the ballot, and the voter's ballot selection on that question or issue, but not the entire text of the question or issue.

8. **R.C. 3506.22(A) and (B):** Requires the secretary of state, beginning in 2013 and every eight years thereafter, to establish a minimum number of machines that a county must have if it selects DRE voting machines as its primary voting system, and establishes a formula that the secretary of state must use in establishing this number.

9. **R.C. 3506.23:** Prohibits any voting machine from being connected to the Internet.

## M. Canvass Deadlines – R.C. 3501.05(U), 3505.32(A) and 3513.22(A)

Amendments to the three canvassing statutes now require a board of elections to complete the official canvass of election returns by the 21st day after the election. The amendments also specify that, generally, no amendments may be made to the canvass later than the 81st day after the election, or the 91st day after a presidential primary election.

## N. Recounts

### 1. Generally

Please refer to Directive 2006-50 (*Election Recount Requirements & Procedures*), issued to all boards of elections on May 17, 2006, for a review of the changes in the recount process.

### 2. Presidential elections

New section 3515.041 incorporates into state law a deadline to accommodate the "safe harbor" provision contained in United States Code for resolving the outcome of a presidential election. The new division provides that any recount of votes conducted under state law for the election of presidential electors "shall be completed not later than six days before the time fixed under federal law for the meeting of those presidential electors."

## O. Federal Elections Cannot be Contested Under State Statute – R.C. 3515.08

R.C. 3515.08(A) as amended specifically excludes elections for federal offices from the state's elections contest process:

> The nomination or election of any person to any federal office, including the office of elector for president and vice president and the office of member of congress, shall not be subject to a contest of election conducted under this chapter. Contests of the nomination or election of any person to any federal office shall be conducted in accordance with the applicable provisions of federal law.

## P. Private Civil Cause of Action re: Harassment – R.C. 3501.90

Newly enacted section 3501.90 creates a private civil cause of action -- a judicial remedy -- for an elector who has experienced "harassment in violation of the election law." This civil cause of

action is separate and distinct from any criminal complaint process that may result in prosecution. The action is filed with a court, not a board of elections or the secretary of state.

R.C. 3501.90(A)(1) defines "harassment in violation of the election law" to mean either of the following:

(a) Any of the following types of conduct in or about a polling place or a place of registration or election: obstructing access of an elector to a polling place; another improper practice or attempt tending to obstruct, intimidate, or interfere with an elector in registering or voting at a place of registration or election; molesting or otherwise engaging in violence against observers in the performance of their duties at a place of registration or election; or participating in a riot, violence, tumult, or disorder in and about a place of registration or election;

(b) A violation of division (A)(1), (2), (3), or (5) or division (B) of section 3501.35 of the Revised Code.

R.C. 3501.90(B) provides the elector has a cause of action against each person that committed the harassment. R.C. 3501.90(E) authorizes the elector to name as defendants any person that employs, sponsors, or uses as an agent any such individual or that has organized a common scheme to cause harassment in violation of the election law. The elector may seek a declaratory judgment, an injunction, or other appropriate equitable relief. The elector may commence this civil action either alone or as a party to a class action under Civil Rule 23.

Additionally, division (C) authorizes the awarding of monetary damages to the elector if the harassment involved:
- intentional or reckless threatening, or
- causing of bodily harm to the elector

while the elector was attempting to register to vote, to obtain an absentee ballot, or to vote.

Division (C)(3) targets certain repeat offenders. It provides that, if the defendant in an action brought under division (B) is an organization that has previously been determined in an Ohio court to have engaged in harassment in violation of the election law, the elector who meets the requisite burden of proof (preponderance of the evidence) may seek a court order granting any of the forms of relief specified in division (C)(3), such as divestiture of property or dissolution.

## IV. State Issue Process

### A. Initial Submission, Summary

Effective May 2, 2006, the requirements and procedures for state issues – and consequently, the duties of the Ohio ballot board set forth in R.C. 3505.062, 3505.063, 3519.01 and 3519.03 – were changed by provisions of Am. Sub. H.B. 3.

The relevant statutes as amended contain new requirements for an initiative petition filed with the attorney general proposing a constitutional amendment or statute, or a referendum petition filed against any law. That petition shall:
- contain at least 1,000 valid signatures (R.C. 3519.01(A) and (B)), and
- be circulated only by Ohio residents, as defined by law (R.C. 3503.06(B)).

Additionally, if the petition is an initiative petition, it shall contain only one proposed law or constitutional amendment (R.C. 3519.01(A)).

R.C. 3519.01 requires the attorney general to examine the petition summary within 10 days after receiving the petition. If the attorney general concludes that the summary is a fair and truthful statement of the proposed constitutional amendment, statute or referendum, he or she shall so certify and then forward the petition to the ballot board for its approval under R.C. 3505.062(A).

Pursuant to R.C. 3505.062(A), the ballot board must examine any initiative petition within 10 days after receiving it from the attorney general to determine whether it contains only one proposed law or constitutional amendment. If the board determines the petition does, it shall certify its approval to the attorney general. However, if the board determines that an initiative petition contains more than one proposed law or constitutional amendment, it "shall divide the initiative petition into individual petitions containing only one proposed law or constitutional amendment so as to enable the voters to vote on each proposal separately and certify its approval to the attorney general."

R.C. 3519.01(C) states that any person aggrieved by a certification decision under R.C. 3519.01(A) or (B) "may challenge the certification or failure to certify of the attorney general in the supreme court, which shall have exclusive, original jurisdiction in all challenges of those certification decisions."

## B. Form of the Petition – R.C. 3519.05

R.C. 3519.05 as amended changes the appearance of state issue petitions. Certain language relative to petition circulators has been revised. Language that references the provisions of new section 3501.382 (person appointed as an attorney in fact to sign another person's name to a petition) has been added to the petition form.

New section R.C. 3519.051 clarifies requirements for signatures, as follows:

> Each signature of a voter who signs an initiative or referendum petition shall be an original signature of that voter in ink. Only initiative and referendum petitions containing those original signatures in ink shall be filed with the office of the secretary of state or a board of elections.

## C. Estimates of Annual Expenditures and Yields – R.C. 3519.04

R.C. 3519.04 as amended specifies that the secretary of state must request an estimate of annual expenditures and yields from the appropriate state agencies within two days after receiving a verified copy of an initiative petition proposing a tax levy or involving a matter that will necessitate the expenditure of any funds of the state or any political subdivision of the state. It also requires the secretary of state to post the estimate upon receipt on the secretary of state's website for 30 days before the election at which the proposed state law or constitutional amendment will be voted upon

## D. Certification of Ballot Language, Explanations and Arguments

R.C. 3519.03(A) moves the deadline for a committee or a group of designated persons to file an argument or explanation, or both, concerning a state issue proposed by initiative or referendum petition with the secretary of state to 80 days (from the previous 75 days) before the election at which the issue will be voted upon.

If the committee or other designated persons fail to file their arguments or explanations by the 80th day before the election, then the Ohio ballot board or a group designated by the ballot board must prepare and file the missing arguments or explanations with the secretary of state's office not later than 75 days (from the previous 70 days) before the election.

---

### E. Information Posted on Secretary of State's Website

New section 3519.07 requires the secretary of state to post each of the following on the secretary of state's website:

1. The full text of each state law or constitutional amendment proposed by initiative petition that has been approved for the ballot;

2. The certified summary of each state law or constitutional amendment proposed by initiative petition that has been approved for the ballot;

3. The ballot language of each state law or constitutional amendment proposed by initiative petition; and

4. The arguments or explanations in favor of or against each state law or constitutional amendment proposed by initiative petition that has been approved for the ballot, including the names of the persons who prepared the argument or explanation.

# V. Other Significant Changes

## A. Secretary of State to Issue Election Instructions and Publications – R.C. 3501.05

### 1. Directives and Advisories – R.C. 3501.05(B)

R.C. 3501.05(B) as amended requires directives and advisories issued by the secretary of state regarding the proper methods of conducting elections to be published on the secretary of state's website as soon as is practicable after they are issued, but not later than the close of business on the same day as they are issued. Additionally, those directives and advisories must be maintained on that website while they are in effect, and in an archive format thereafter.

### 2. Telephone conference call materials– R.C. 3501.05(W)

R.C. 3501.05(W) now specifies that the secretary of state must ensure that all directives, advisories, other instructions, or decisions issued or made during or as a result of any conference call or teleconference call with a board of elections (1) to discuss the proper methods and procedures for conducting elections, (2) to answer questions regarding elections, or (3) to discuss the interpretation of directives, advisories, or other instructions issued by the secretary of state are posted on the secretary of state's website as soon is practicable after the completion of the conference call or teleconference call, but not later than the close of business on the same day as the call takes place.

### 3. Certain ballots issued and counted in primary and general elections – R.C. 3501.05(X)

R.C. 3501.05(X) requires the secretary of state to publish a report on the secretary of state's website not later than one month after the completion of the canvass of the election returns for each primary and general election identifying, by county, the number of absent voter's ballots and provisional ballots that were cast and the number of each of those types of ballots that were counted.

## B. Municipal Judge Candidates' Signature Requirement - R.C. 1901.07, 1901.10 and 1901.31

The act requires, as a general rule, that the declaration of candidacy and petition or the nominating petition for a candidate for municipal court judge or for an elected municipal court clerk must contain valid signatures of 50 qualified electors of the territory of the court. The statutes affected by this change are:

- R.C. 1901.07(B) and (C),
- R.C. 1901.10(A)(1)(c) and (d), and
- R.C. 1901.31(A)(1)(a), (d), (e), (f), and (g)).

Each board of election must familiarize itself with any change that may affect one or more of the municipal courts in the county. A board also should be aware of any municipal charter provisions that may apply to a particular municipal court.

## C. Notice of Intent to Retire: Candidates – R.C. 145.38 and R.C 3501.13(D)

R.C. 145.38(C)(3)(a) clarifies the prior notice filing requirements by specifying that a candidate who is required to file a written declaration of intent to retire in accordance with R.C. 145.38 shall file the notice with "the director" of the board of elections of the county in which petitions for nomination or election to the office are filed.

Additionally, new division (D) of R.C. 3501.13 requires the director to provide to each member of the board of elections a copy of any written declaration of intent to retire that was filed with the director in accordance with R.C. 145.38.

## D. Felon Restrictions – R.C. 2961.01(B), R.C. 2967.17(B)

A person who has been convicted of a felony can neither circulate a petition nor serve as a witness for a petition. New division (B) of R.C. 2961.01 states: "A person convicted of a felony under laws of this state or any other state or the United States is incompetent to circulate or serve as a witness for the signing of any declaration of candidacy and petition, voter registration application, or nominating, initiative, referendum, or recall petition."

Further, R.C. 2967.17(B) as amended provides that a felon's right to circulate, or serve as a witness for, a petition cannot be restored by the Adult Parole Authority's decision to grant that felon administrative release.

## E. Criminal Sanctions

### 1. Offenses concerning petitions and declarations of intent of write-in candidates – R.C. 3599.14(A) and (B)

Am. Sub. H.B. 3 increases from a misdemeanor of the first degree to a felony of the fifth degree the penalty for persons knowingly, directly or indirectly, engaging in certain offenses concerning any declaration of candidacy and petition, declaration of intent to be a write-in candidate, nominating petition, or other petition for any of the following purposes:

- Being a candidate for elective office,
- Submitting a question or issue to the electors, or
- Forming a political party.

Among the forms of conduct prohibited by law are misrepresentation of the contents, purpose, or effect of a petition or declaration for certain purposes, and paying a person anything of value for signing, or not signing, a petition or declaration.

### 2. Interference with elections - R.C. 3599.24(A)(5). (A)(6) and (B)

---

Am. Sub. H.B. 3 increases from a minor misdemeanor to a misdemeanor of the first degree the penalty for loitering in or about a registration or polling place during registration or the casting and counting of ballots so as to hinder, delay, or interfere with the conduct of the registration or election.

It also increases from a minor misdemeanor to a misdemeanor of the first degree the penalty for removing pencils, cards of instruction, supplies, or other conveniences furnished to enable a voter to mark the voter's ballot.

## F. Ohio Attorney General's Authority to Investigate/Prosecute Election Fraud – R.C. 109.95

New section R.C. 109.95 authorizes the Ohio attorney general to initiate criminal proceedings for election fraud under R.C. 3599.42 (generally, interference with the conduct of an election) that results from a violation of any provision of Title XXXV of the Revised Code – other than Chapter 3517. (laws governing political parties and campaign finance reporting requirements) – involving voting, an initiative or referendum petition process, or the conducting of an election, by presenting evidence of criminal violations in question to the prosecuting attorney of any county in which the violations may be prosecuted.

Additionally, if the prosecuting attorney does not prosecute the violations within a reasonable time or requests the attorney general to do so, the attorney general may proceed with the prosecution with all of the rights, privileges and powers conferred by law on a prosecuting attorney.

## G. Secretary of State and Attorney General Prohibited from Serving in Certain Election-Related Capacities – R.C. 3501.052

### 1. Restrictions on the Secretary of State's political activities

Divisions (A), (B) and (C) of new section 3501.052 prohibit the secretary of state from serving as campaign treasurer, treasurer, or in any other official capacity, for any:
- Campaign committee for any state or local office other than an office to which the secretary of state is seeking election.
- Principal campaign committee or other authorized committee for any federal office other than an office to which the secretary of state is seeking election.
- Committee named in an initiative or referendum petition, any person making disbursements for the direct costs of producing or airing electioneering communications, or any other committee regulated under Chapter 3517. of the Revised Code.

### 2. Restrictions on the Attorney General's political activities

R.C. 3501.052(D) prohibits the attorney general from serving as a treasurer or in any other official capacity for any committee named in an initiative petition or any committee named in a referendum petition.

If you have questions on this advisory, please contact the Elections Division at 614-466-2585.

Sincerely,

Monty Lobb
Assistant Secretary of State

---