# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **PROJECT VOTE**, *et al.*, | : | **Case No. 1:06-CV-1628** |
| | : | |
| **Plaintiffs**, | : | **JUDGE KATHLEEN M. O'MALLEY** |
| | : | |
| **v.** | : | |
| | : | |
| **J. KENNETH BLACKWELL**, *et al.*, | : | **MEMORANDUM & ORDER** |
| | : | |
| **Defendants.** | : | |

Pending before the Court is *Plaintiffs' Motion for Costs and Attorneys' Fees* (Doc. 63).  For the reasons articulated below, the Court **GRANTS IN PART** Plaintiffs' motion and concludes that Plaintiffs are entitled to **an award of attorneys' fees in the amount of $312,925.00** and **an award of costs in the amount of $8,560.28** for **a total award of $321,485.28**.

## I.  BACKGROUND

**A.  THE UNDERLYING LITIGATION – PLAINTIFFS SECURED A PRELIMINARY AND PERMANENT INJUNCTION PROHIBITING ENFORCEMENT OF THE CHALLENGED PROVISIONS OF OHIO VOTER REGISTRATION LAW**

Plaintiffs are various civic organizations, and their individual members, who are engaged in voter registration activities throughout Ohio.  The current Defendants are Ohio Secretary of State Jennifer Brunner and Ohio Attorney General Richard Cordray.[1]

---

[1]     Defendant Cordray, as the successor to now-former Ohio Attorney General Marc Dann, is automatically substituted as a party in this action under Rule 25(d) of the Federal Rules of Civil Procedure.  Defendant Brunner similarly entered this case *via* substitution as the successor to former Ohio Secretary of State J. Kenneth Blackwell.  (Court's July 17, 2007 Order.)  This case also previously included Defendants William D. Mason (Cuyahoga County Prosecutor) and Sherri Bevan Walsh (Summit County Prosecutor).  By agreement of the parties, Plaintiffs' claims against those Defendants were dismissed without prejudice.  (Court's August 1, 2007 Order.)

On July 6, 2006, after substantial efforts to achieve an administrative resolution outside of court failed, Plaintiffs filed an eight-count Complaint (Doc. 1), alleging that recent amendments to the Ohio Election Code unlawfully impacted third-party voter registration efforts in Ohio and hindered low-income, minority, and disabled citizens from registering to vote.  Specifically, Plaintiffs challenged the validity of various portions of Ohio Revised Code §§ 3503.14, 3503.19, 3503.28, 3503.29, and 3599.11.  These sections were codified in Title 35 (titled "Elections") of the Ohio Revised Code by what the parties referred to as "House Bill 3."  In sum, Plaintiffs claimed that House Bill 3's modifications and/or additions to the Ohio Election Code, and the implementing regulations enacted by the Ohio Secretary of State, violated the First and Fourteenth Amendments to the United States Constitution, the Voting Rights Act ("VRA"), and the National Voter Registration Act of 1993 ("NVRA").

One week later, on July 13, 2006, Plaintiffs filed a motion for preliminary injunction (Doc. 3), seeking to enjoin Defendants from enforcing any of the challenged legislation and regulations. Defendants opposed Plaintiffs' motion arguing that, among other things, Plaintiffs failed to show that the legislation and regulations unduly burdened any protected First Amendment right (Doc. 18).[2] Plaintiffs replied (Doc. 26) by essentially restating the positions asserted in their Complaint and motion. Shortly thereafter, all parties filed voluminous evidentiary materials in support of their respective positions.  (*See* Docs. 28-43.)  The Court then met with the parties and scheduled a hearing on Plaintiffs' motion for preliminary injunction.

---

[2]     With the exception of then-Defendant William D. Mason, Defendants simultaneously (*i.e.*, as part of their opposition papers) moved to dismiss Plaintiffs' Complaint.  (Doc. 18.)  Briefing on the motion to dismiss proceeded separately.  (Doc. 49.)

On September 1, 2006, the Court conducted a preliminary injunction hearing.  The parties presented oral arguments with substantial interaction by the Court; they did not present additional evidence.  Given the approaching general election, and the Boards of Elections' stated need for relatively immediate guidance (*see* Doc. 46 at p. 78), the Court agreed that the circumstances necessitated an expedited ruling.  The Court, therefore, after a lengthy recess to review the record and to consider its ruling, proceeded to deliver a detailed oral ruling at the hearing in which it granted a preliminary injunction to Plaintiffs (*see id.* at pp. 80-103).  One week later, on September 8, 2006, the Court issued a 24-page written Order (Doc. 45), which memorialized and supplemented the Court's oral ruling granting the preliminary injunction.  In short, the Court held that the challenged portions of Ohio Revised Code §§ 3503.14, 3503.19, 3503.28, 3503.29 and 3599.11 and the Secretary of State's interpretation of those provisions were likely unconstitutional and that certain of those provisions also likely violated the NVRA.  (Docs. 45, 46.)

Then, in the months that followed, the Court conducted two status conferences with the parties (*see* Docs. 50 and 52).  Based on the parties' then-current belief that a resolution could be reached short of continued litigation, the Court referred the parties to mediation (*see* Doc. 52).  In mid-June 2007, however, the parties determined that mediation would not be fruitful (*see* Doc. 54) and that the case should proceed toward a judicial resolution.

Several weeks later, on July 13, 2007, Plaintiffs filed a motion for partial summary judgment (Doc. 57), seeking final judgment on six of the eight counts alleged in their Complaint.  The parties' briefing on the motion, however, presented nothing new for the Court's consideration; instead, the parties simply incorporated the evidence and arguments presented in their prior briefs.  (Doc. 59 at pp. 4-5; *see also* Docs. 57, 58.)  After again reviewing the parties' voluminous filings relative to the motion

3

for preliminary injunction, and upon a further review of the Court's oral and written Orders resolving that motion (Docs. 45, 46), the Court entered an Order concluding that Plaintiffs' motion for partial summary judgment should be granted for the same reasons that Plaintiffs' motion for preliminary injunction was granted (Doc. 59).  In a separate Order, the Court then entered partial final judgment in favor of Plaintiffs and against Defendants on the six counts advanced in Plaintiffs' motion.  (Doc. 60.)  Specifically, the Court entered a declaratory judgment that the challenged provisions of the Ohio Revised Code, as well as their accompanying regulations and administrative practices, violated the First and Fourteenth Amendments (Counts I, II, III, VII, and VIII) and the NVRA (Count VI), and the Court permanently enjoined Defendants from enforcing those provisions. (*Id.*)

The remaining two counts of the Complaint that were not litigated in Plaintiffs' motion for partial summary judgment were voluntarily dismissed without prejudice by Plaintiffs (*see* Docs. 49, 59, 65, 66), and the case was eventually closed (*see* Doc. 66).

**B.** **PLAINTIFFS' PENDING MOTION FOR ATTORNEYS' FEES AND COSTS**

In the post-judgment context, Plaintiffs have now filed the pending motion seeking an award for the attorneys' fees and costs incurred in litigating this federal civil rights matter pursuant to 42 U.S.C. §§ 1988(b) and 1973*l*(e).  (Doc. 63.)  Plaintiffs argue that they are prevailing parties under the statutes and thus entitled to their reasonable attorneys' fees and costs.  Plaintiffs request an award of

$446,752.00 for attorneys' fees[3] and $10,808.32 in costs[4] for a total award of $457,560.32.[5]  In support

of their request for fees and costs, Plaintiffs have attached numerous documents to the motion (*e.g.*,

declarations,[6] biographies of individuals who worked on the matter, billing time-entries, expenses),

---

[3]     Plaintiffs originally requested $450,002.00 for attorneys' fees.  (*See* Doc. 63 at pp. 2, 17.)  Then, in their reply, Plaintiffs note that two particular billing entries were included in error and should be omitted from the total fee request.  (*See* Doc. 68 at p. 12.)  Specifically, Plaintiffs conceded that 5 hours should be deducted from Attorney Weiser's time, and 3 hours should be deducted from Attorney Bauer's time.  Accordingly, Plaintiffs reduce the total fee request by $3,250 and list $446,752.00 as the total amount requested for attorneys' fees in their reply.  (*See id.* at pp. 12, 16.)

[4]     Plaintiffs state in the text of their motion that the total amount of costs requested is $10,803.59.  (*See* Doc. 63 at pp. 2, 17.)  Based on the declarations and other supporting materials attached to their motion, however, the Court calculates the actual total amount of costs requested to be $10,808.32.

[5]     The Court notes that, in addition to the other modification described in previous footnotes, the spreadsheet submitted by Plaintiffs contains a clerical error by omitting Attorney Teresa James' requested fees in Project Votes's total amount requested and thus inaccurately lists Plaintiffs' total requested amount as $452,705.59.  (*See* Doc. 63-3.)

[6]     Defendants state that none of Plaintiffs' "declarations" were properly executed affidavits.  (Doc. 67 at p. 16 n.8.)  The Court largely disagrees.  First, the declaration submitted by H. Ritchey Hollenbaugh was notarized and is a properly executed affidavit.  (Doc. 63-2.)  Second, the Court notes that unsworn declarations can be used as evidence if "subscribed . . . as true under penalty of perjury and dated" under 28 U.S.C. § 1746.  *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994).  Therefore, because the declarations submitted by Teresa James, Rayesh Nayak, Renee Paradis, and Wendy Weiser were all "subscribed as true under penalty of perjury and dated," each can be used as evidence under 28 U.S.C. § 1746.  (Docs. 63-7, 63-8, 63-9, 63-10.)  Likewise, even though the declarations submitted by Karl Sandstrom and Donald McTigue do not technically comply with the requirements of 28 U.S.C. § 1746, these declarations cite the statute and satisfy the spirit of the rule and thus will be considered as evidence.  (Docs. 63-4, 63-5, 68-2.)  The Court, however, notes that the "declaration" submitted by Brian Mellor is unsigned.  (Doc. 63-6 at p. 3.)  Consequently, his "declaration" cannot be used as evidence, and the Court cannot consider his statement.  *See Smith v. Jefferson County Sch. Bd.*, 549 F.3d 641, 657 n.8 (6th Cir. 2008).

5

stating that they have properly computed the award to which they are entitled.  Specifically, with respect to fees, Plaintiffs' request is based on bills for 1,416.45 hours by twenty-one time-keepers (fourteen attorneys, four law clerks/summer associates/interns, two administrative assistants, and one librarian) from four different firms/advocacy groups at hourly rates ranging from $500.00 to $110.00.

Defendants have vigorously opposed Plaintiffs' motion. (Doc. 67.) First, Defendants argue that Plaintiffs' request for attorneys' fees and costs should be denied in its entirety, because the fee application is an attempt to inflate bills and should shock the conscience of the Court.  Defendants contend that Plaintiffs' request in this case – nearly a half million dollar fee to pay for more than a dozen attorneys to prepare a case involving no witnesses or discovery – is so unreasonable, excessive, and improper that the Court should deny Plaintiffs' motion outright.  Citing a number of specific examples, Defendants assert that Plaintiffs' counsel have over-lawyered the case, billed duplicatively, expended unnecessary amounts of time on simple assignments, included tasks that cannot conceivably be related to the litigation, requested hourly rates that cannot be justified, and asked for "costs" that are not reasonable.  As such, Defendants believe that a complete denial of the fee request is more than appropriate.  Alternatively, Defendants argue that if fees and costs are awarded, deductions from Plaintiffs' requested amount should be commensurately large.

In response to Defendants' opposition, Plaintiffs have filed a reply and submitted a supplemental declaration. (Doc. 68.)  Plaintiffs argue that nothing in the record supports Defendants' allegation that the request was either "grossly and intolerably exaggerated" or "so exorbitant to shock the conscience of the Court" and that, therefore, there is no basis for the complete denial of fees and costs.  In particular, Plaintiffs suggest that Defendants' argument is particularly inappropriate given Defendants' agreement, after reviewing Plaintiffs' motion and accompanying documentation, not to

request a hearing or seek discovery.  Further, Plaintiffs contend that their request for fees and costs is reasonable and should be granted.  Specifically, Plaintiffs argue that:  (1) Plaintiffs' fee request is justified by the extraordinary results achieved, the complexity of the case, and the novelty of the issues presented; (2) the particular billing time-entries challenged by Defendants are reasonable; (3) Plaintiffs' various counsel each played distinct roles in the litigation; (4) Plaintiffs' proposed hourly rates are reasonable; and (5) the expenses claimed by Plaintiffs are reasonable and necessary.

Defendants have not sought leave to file a sur-reply or have otherwise responded to Plaintiffs' reply and supplemental declaration.  Having received no other filings, the Court now resolves Plaintiffs' pending motion for fees and costs.

## II.  DISCUSSION

In resolving Plaintiffs' pending motion, the Court first discusses generally the applicable law regarding awards for attorneys' fees and costs in federal civil rights suits.  The Court then applies the applicable law to determine the appropriate award in this case.

**A.     APPLICABLE LAW**

**1.     The Federal Civil Rights Fee Shifting Statutes**

The federal civil rights fee shifting statutes provide for awards of reasonable attorneys' fees and costs to plaintiffs who prevail in civil rights suits, including suits to enforce First Amendment and voting rights.  *See* 42 U.S.C. § 1973*l*(e) ("In any action or proceeding to enforce the voting guarantees of the Fourteenth or Fifteenth Amendment[s], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs."); 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party,

7

other than the United States, a reasonable attorney's fee as part of the costs. . . ."); *see also* 42 U.S.C.

§ 1973gg-9(c) (providing for "reasonable attorney fees, including litigation expenses, and costs" for

a prevailing party who brings suit under the NVRA).[7]

### 2. Complete Denial Of Fees Only In Very Limited Circumstances

Accordingly, a prevailing plaintiff in a federal civil rights suit ordinarily should recover

reasonable attorneys' fees and costs "unless special circumstances would render such an award unjust."

*Hensley*, 461 U.S. at 429 (internal quotations omitted). Several courts have recognized that one special

circumstance that justifies a district court's *complete* denial of fees is when the fee request is "so

excessive it shocks the conscience of the court." *Scham v. Dist. Courts Trying Crim. Cases*, 148 F.3d

554, 557 (5th Cir. 1998) (internal quotations omitted); *see also Fair Hous. Council v. Landow*, 999

F.2d 92, 96 (4th Cir. 1993); *Lewis v. Kendrick*, 944 F.2d 949, 957-58 (1st Cir. 1991); *Sun Publ'g Co.*

*v. Mecklenberg News, Inc.*, 823 F.2d 818, 819 (4th Cir. 1987); *Brown v. Stackler*, 612 F.2d 1057, 1059

(7th Cir. 1980). These courts, however, generally have cautioned that the "[t]otal denial of requested

fees . . . is a stringent sanction, to be reserved for only the most severe of situations, and appropriately

invoked only in very limited circumstances." *Jordan v. U.S. Dep't of Justice*, 691 F.2d 514, 518 (D.C.

Cir. 1982) (reversing district court order completely denying request for fees as an abuse of discretion).

Further, in the Sixth Circuit, the defendant bears the burden of making a "strong showing" of special

circumstances sufficient to warrant denying an award of fees and costs to a prevailing plaintiff. *Deja*

*Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 421 F.3d 417, 422 (6th Cir.

---

[7]     Because these fee shifting statutes contain nearly identical language and serve the
same Congressional purposes, courts generally construe the sections similarly,
and the same standards apply to fees recovered under all three sections. *See*
*Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983); *Nat'l Coalition for Students*
*with Disabilities v. Bush*, 173 F. Supp. 2d 1272, 1274 (N.D. Fla. 2001).

2005) (quoting *Morscott, Inc. v. City of Cleveland*, 936 F.2d 271, 273 (6th Cir. 1991) (citation omitted)).

### 3.    The Lodestar Analysis

Once the Court finds that a prevailing plaintiff is entitled to attorneys' fees and costs under the fee shifting statutes, the primary concern with respect to attorneys' fees is that the fee awarded be reasonable. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). A reasonable fee is one that attracts competent counsel but avoids producing a windfall. *Id.*

In determining what is a reasonable amount of attorneys' fees, a useful starting point is to determine the "lodestar," which is calculated by multiplying the proven number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.*; *see also Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2004).

When a court is calculating the lodestar, the party seeking attorneys' fees bears the burden of proving the reasonableness of the hourly rates claimed. *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999) (citing *Hensley*, 461 U.S. at 433). The reasonableness of a claimed hourly rate is determined by reference to the prevailing rate in the relevant market – *i.e.*, the rate that is customarily paid in the community to attorneys of reasonably comparable skill, experience, and reputation –  regardless of whether plaintiff is represented by private or nonprofit counsel. *See Johnson v. City of Clarksville*, 256 Fed. Appx. 782, 783 (6th Cir. 2007) (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984)); *see also Fuhr v. Sch. Dist. of Hazel Park*, 364 F.3d 753, 762 (6th Cir. 2004). In this regard, the Sixth Circuit specifically has found that the relevant market is "the venue of the court of record," rather than a foreign counsel's "geographical area wherein he maintains his office and/or normally practices." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). Moreover, the hourly rate

"should not exceed the market  rates necessary to encourage competent lawyers to undertake the representation in question."  *Reed*, 179 F.3d at 472 (quoting *Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986)).  As the Sixth Circuit has stated, under the federal civil rights fee shifting statutes:

> [Attorneys'] fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region.  Under these statutes a renowned lawyer who customarily receives $ 250 an hour in a field in which competent and experienced lawyers in the region normally receive $ 85 an hour should be compensated at the lower rate.

*Id.* at 472-73 (quoting *Coulter*, 805 F.2d at 149).  And finally, in exercising its discretion to determine a reasonable hourly rate, a district court may consider a party's submissions (*e.g.*, affidavits or declarations from other attorneys or experts), awards in analogous cases, state bar association guidelines, and its own knowledge and experience from handling similar requests for fees. *See Johnson v. Connecticut Gen. Life Ins., Co.*, No. 5:07-CV-167, 2008 U.S. Dist. LEXIS 24026, at *14 (N.D. Ohio Mar. 13, 2008); *Mikolajczyk v. Broadspire Servs., Inc.*, 499 F. Supp. 2d 958, 965 (N.D. Ohio 2007); *Barrett v. Detroit Heading, LLC*, No. 05-72341, 2007 U.S. Dist. LEXIS 41555, at *25-26 (E.D. Mich. June 7, 2007); *Ousley v. Gen. Motors Ret. Program for Salaried Employees*, 496 F. Supp. 2d 845, 850 (S.D. Ohio 2006) (citing *Coulter*, 805 F.2d at 149-50).

Similarly, the party seeking attorneys' fees also bears the burden of proving the number of hours reasonably expended on the litigation.  *Granzeier*, 173 F.3d at 577 (citing *Hensley*, 461 U.S. at 433).  Counsel for the prevailing party must make a good faith effort to exclude from a fee application hours that are "excessive, redundant, or otherwise unnecessary," just as an attorney in private practice is expected to use "billing judgment" before submitting a bill to a client, and the district court should exclude any such hours improperly submitted.  *Hensley*, 461 U.S. at 434.  Further, sufficient documentation must be offered in support of the hours charged, *i.e.*, the documentation "must be of

sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 553 (6th Cir. 2008) (noting that "counsel need not record in great detail each minute he or she spent on an item," but indicating that "the general subject matter should be identified") (internal quotations omitted).  Where reductions to the requested number of hours reasonably expended on the litigation are appropriate, a court has the discretion to utilize a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions, particularly when fee documentation is voluminous. *See Auto Alliance Int'l, Inc. v. U.S. Customs Serv.*, 155 Fed. Appx. 226, 228 (6th Cir. 2005) (affirming the district court's reduction of the fee award by 25% for general excessiveness in billing); *Hudson v. Reno*, 130 F.3d 1193, 1209 (6th Cir. 1997) (applying across-the-board reduction of 25% for duplication), *overruled on other grounds by Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001); *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) ("Where fee documentation is voluminous . . . an hour-by-hour review is simply impractical and a waste of judicial resources."); *Coulter*, 805 F.2d at 152 ("Where duplication of effort is a serious problem, as in this case, the District Court may have to make across the board reductions by reducing certain items by a percentage figure, as Judge Morton did here in reducing this item by 50%"); *Hisel v. City of Clarksville*, No. 3:04-0924, 2007 U.S. Dist. LEXIS 71766, at *6-16 (M.D. Tenn. Sept. 26, 2007) ("While cutting hours may appear arbitrary, it is an essentially fair approach . . ., and an across-the percentage cut is a practical means of trimming the fat from a fee application.") (internal citations and quotations omitted); *see also Cmtys. for Equity v. Mich. High Sch. Ath. Ass'n*, No. 1:98-CV-479, 2008 U.S. Dist. LEXIS 25640, at *14-15 (W.D. Mich. Mar. 31, 2008).

Then, after a court determines the proper lodestar amount, that amount can be adjusted (*i.e.*, enhanced or reduced by a multiplier) based on a twelve-factor test for assisting in the determination of the reasonableness of an application for attorneys' fees. *Reed*, 179 F.3d at 471-72 & n.3 (noting that these factors were "enunciated by the Fifth Circuit in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and adopted by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 432 . . . (1983)") (hereinafter, the "twelve *Johnson* factors").[8] These twelve *Johnson* factors are as follows:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (quoting *Johnson*, 488 F.2d at 717-19). Of the twelve *Johnson* factors, the "results obtained" factor is "highly important." *Adcock-Ladd*, 227 F.3d at 349 (citing *Hensley*, 461 U.S. at 435-36). In fact, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 349-50 (quoting *Hensley*, 461 U.S. at 435). There is, however, "a strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *see also Bldg. Serv. Local 47 Cleaning Contr. Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995).

---

[8]     Although the Supreme Court has recognized that the twelve factors "are usually subsumed with the initial calculation of hours reasonably expended at a reasonable hourly rate," a court should still address the relevant factors after the lodestar analysis. *Hensley*, 461 U.S. at 434 n.9.

### 4.    Costs And Expenses

In addition to fees, a court also must consider the reasonable amount of costs to be awarded a prevailing plaintiff under the fee shifting statutes.  The Sixth Circuit has explained that there are two types of expenses recoverable by prevailing parties in civil rights litigation:

> There are two separate sources of authority to award out-of-pocket expenses.  Some expenses are included in the concept of attorney's fees, as "incidental and necessary expenses incurred in furnishing effective and competent representation," and thus are authorized by [42 U.S.C.] § 1988. . . . The authority granted in section 1988 to award a reasonable attorney's fee includes the authority to award those reasonable out-of-pocket expenses incurred by the attorney, which are normally charged to a fee-paying client in the course of providing legal services. . . . Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to the statutory authority of section 1988. . . .
>
> Other costs are on a different footing.  These include those costs incurred by a party to be paid to a third party, not the attorney for the case, which cannot reasonably be considered to be attorney's fees. . . . These include, among others, docket fees, investigation expenses, deposition expenses, witness expenses, and the costs of charts and maps. . . . Most of these expenses have long been recoverable in the court's discretion, as costs pursuant to 28 U.S.C. § 1920. . . .

*Northcross v. Bd. of Educ. of Memphis City Sch.*, 611 F.2d 624, 639 (6th Cir. 1979) (citations omitted); *see also Sigley v. Kuhn*, No. 98-3977/99-3531, 2000 U.S. App. LEXIS 1465, at *23-26 (6th Cir. Jan. 31, 2000).

### 5.    District Court's Discretion

And finally, it is worth noting that in awarding attorneys' fees and costs under the federal civil rights fee shifting statutes, a district court's decision is reviewed for an abuse of discretion, and the district court's "exercise of discretion is entitled to substantial deference because the rationale for the award is predominantly fact-driven."  *Imwalle*, 515 F.3d at 551.

**B.      APPLICATION**

Here, Defendants do not contest that Plaintiffs are "prevailing parties" under the federal civil rights fee shifting statutes. *See* 42 U.S.C. §§ 1988(b) and 1973*l*(e). Defendants also do not contest that Plaintiffs' counsel have obtained anything less than "excellent results." *See Adcock-Ladd*, 227 F.3d at 349-50 (quoting *Hensley*, 461 U.S. at 435). Instead, as noted, Defendants challenge Plaintiffs' request for fees and costs, by arguing that the request is so unreasonable, excessive, and improper that it should be denied *in toto*. Alternatively, Defendants contend that if fees and costs are awarded, the Court should impose significant reductions.

As explained in more detail below, the Court declines to deny the request for fees and costs *in toto*, but exercises its discretion to reduce Plaintiffs' requested award in light of the applicable law and a thorough review of the parties' submissions.

**1.      Complete Denial Of Fees And Costs Is Inappropriate**

Defendants primarily argue that Plaintiffs' request for fees and costs should be denied in its entirety, because the fee application – both on its face and with respect to repeated specific instances of double billings, inflated hours, improper charges, and exorbitant and unsubstantiated proposed hourly rates – should shock the conscience of the Court. In support of this argument, Defendants first point to a litany of examples from the record and contend that: (1) it is beyond question that this case was "over-lawyered" and that 1,416.45 hours of work in this case with no discovery and relatively little filings is patently "absurd"; (2) a close inspection of the fee application demonstrates that Plaintiffs' counsel billed duplicatively, expended unnecessary amounts of time on simple assignments, included tasks that cannot conceivably be related to the litigation, and asked for "costs" that are not reasonable; and (3) Plaintiffs have requested hourly rates that cannot be justified. Defendants then cite to a number

14

of cases generally standing for the proposition that a *complete* denial of a fee request is appropriate if the request is grossly and intolerably exaggerated, manifestly filed in bad faith, or wholly undocumented.  *Jordan*, 691 F.2d at 518; *see also, e.g.*, *Budget Rent-A-Car Sys., Inc. v. Consol. Equity LLC*, 428 F.3d 717 (7th Cir. 2005); *Scham*, 148 F.3d at 557; *Fair Housing Council*, 999 F.2d at 96; *Lewis*, 944 F.2d at 957-58; *Sun Publ'g Co.*, 823 F.2d at 819; *Brown*, 612 F.2d at 1059; *Mendez v. County of San Bernardino*, No. CV 04-7131 GPS (RCx), 2007 U.S. Dist. LEXIS 75495, at *1-4 (C.D. Cal. May 21, 2007).

The Court, however, rejects Defendants' argument.  While Defendants raise a number of valid concerns and Plaintiffs' fee application is lacking in some respects, the circumstances here do not justify the "stringent sanction" that Defendants seek, but instead direct the Court to reduce – not deny – the requested award.  *Jordan*, 691 F.2d at 518, 521 ("To decline any fee award whatsoever simply because of doubts on parts of the claim is, in any but the most severe of cases, a failure to use . . . discretion.").  As Defendants do not dispute, Plaintiffs' counsel achieved "excellent results" – indeed, Plaintiffs secured all the relief that they sought in their Complaint:  a declaratory judgment and a preliminary and permanent injunction prohibiting enforcement of the challenged provisions of Ohio registration law.  This alone suggests that Plaintiffs' counsel should recover their requested fee.  *See Adcock-Ladd*, 227 F.3d at 349-50 (quoting *Hensley*, 461 U.S. at 435).  Further, Plaintiffs' counsel were forced to achieve these results on an expedited basis – in part because of the now-former Ohio Secretary of State's interpretation of the challenged provisions – by presenting a novel theory in a previously undeveloped area of election law.  And finally, this is not a case where a party has failed to proffer *any* substantiation, as Plaintiffs' counsel has submitted multiple declarations, billing records, and other documents attached to their motion, demonstrating a significant effort to account for each

hour spent working on this matter and to otherwise show that they are entitled to the requested award.

As such, the cases Defendants cite are easily distinguishable.  In fact, the Court notes that the Central District of California's decision to deny an award entirely in *Mendez* – cited by Defendants for the proposition that it was unconscionable to bill over 2,500 hours to prepare for and try a case that only took a few days to try (*see* Doc. 67 at pp. 10-11) – has since been reversed by the Ninth Circuit and is particularly instructive.  *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1124-30 (9th Cir. 2008).  In its decision, the Ninth Circuit aptly discussed many of the same cases that Defendants argue are applicable here, concluding that those courts have denied a fee request in only two limited circumstances – in cases where the request appeared to be made in bad faith or where the plaintiff made no effort to eliminate time spent on unsuccessful claims:

> Those courts of appeals that have upheld a denial of fees under the "shocks the conscience" test have done so only where the fee request appeared to have been made in bad faith, such as billing outrageous numbers of hours on simple matters, or where the plaintiff made no effort to eliminate hours spent on unsuccessful, unrelated claims. In the **first** category are cases such as *Brown*, where the Seventh Circuit denied all fees to an attorney who submitted a request for 800 hours of billable time, even though his work consisted of filing a six-page complaint and then simply await[ed] the outcome of pending litigation in the Supreme Court that "almost automatically . . . disposed of the case." 612 F.2d at 1059. Similarly, in *Scham*, the Fifth Circuit upheld a total denial of fees where an attorney billed 936 hours for a case where "discovery was limited, and there were no meetings of the parties or attorneys, no settlement negotiations, no mediation, no court appearances, and no trial." 148 F.3d at 558. The counsel in *Scham* was also a solo practitioner with one year of experience, who nonetheless requested $750 per hour for his time. *Id.* Therefore, in both of these cases, it was altogether improbable that any attorney could have reasonably expended such hours in good faith on matters so simple. Falling into the **second** category are cases such as *Fair Housing Council*, 999 F.2d 92, where the Fourth Circuit upheld a denial of fees to a prevailing plaintiff who made no effort to eliminate large numbers of hours spent on unsuccessful, unrelated claims. In that case, plaintiffs brought separate claims for housing discrimination and breach of contract, succeeding only on their breach of contract claim. *See id.* at 95. Although the housing discrimination and contract claims were not related – and the discrimination claim was by far the more complex of the two to litigate – the plaintiffs nonetheless submitted a request for $537,113 in fees for the entire litigation, with billing entries that "failed to allocate the fees attributable to each claim."

> *Id.* The First Circuit similarly upheld the denial of fees in *Lewis v. Kendrick*, 944 F.2d
> 949, 957-58 (1st Cir. 1991), where plaintiffs achieved only minor success and yet
> "made no reduction for claims" that had "no relation" to the victorious claim.

*Id.* at 1127 (emphasis added). The Ninth Circuit distinguished those cases and found that there was no evidence that the plaintiff's fee request was either made in bad faith or contained excessive hours spent on unrelated claims and thus found nothing in the request that would "shock the conscience" of the court, such as was present in cases like *Scham*, *Brown*, *Lewis*, and *Landow*. *Id.* at 1128.

Similarly, here, while the Court again recognizes that Defendants properly raise several questions regarding some deficient aspects of Plaintiffs' fee application (which are all addressed in detail below), the Court finds that there is no evidence that the request was made in bad faith, and, further, the request could not have contained any excessive hours spent on unrelated, unsuccessful claims because Plaintiffs' counsel has obtained all of the benefits Plaintiffs sought by bringing this suit. In short, therefore, the Court determines that, like the request in *Mendez*, and unlike the requests in cases like *Scham*, *Brown*, *Lewis*, and *Landow* and the other cases Defendants cite, Plaintiffs' fee request does not "shock the conscience" of the Court and should not be denied in its entirety. Quite simply, Defendants have not met their burden of making a "strong showing" of special circumstances sufficient to warrant denying an award, *Deja Vu of Nashville, Inc.*, 421 F.3d at 422. Despite any reductions that should (and will) be made to Plaintiffs' fee request, moreover, a complete denial of fees in this case would not be a "fair result with far-reaching positive consequences" (Doc. 67 at p. 11), but instead would frustrate the purpose of the federal civil rights fee shifting statutes, which is to encourage socially productive litigation like the instant lawsuit, *see Cleveland v. Ibrahim*, 121 Fed. Appx. 88, 91 (6th Cir. 2005). Plaintiffs achieved a significant civil rights victory in an area of law that was anything but simple, which ultimately allowed them to register thousands of new voters in time for the

17

November 2006 elections; their counsel should be awarded attorneys' fees and costs under the fee shifting statutes.

### 2.    The Court Reduces Plaintiffs' Requested Award

Having found that Plaintiffs are entitled to attorneys' fees and costs under the federal civil rights fee shifting statutes, the Court next must address what constitutes a reasonable award and whether Plaintiffs are entitled to their full request.  In this regard, the Court will first examine the reasonable amount of fees to be awarded and then will consider the reasonable amount of costs to be awarded.

### a.    Attorneys' Fees

In determining what is a reasonable amount of attorneys' fees here, the Court first calculates the lodestar by multiplying the proven number of hours reasonably expended on the litigation by a reasonable hourly rate.  *See Reed*, 179 F.3d at 471.  The Court then will analyze whether an adjustment of the lodestar should be made in light of the twelve *Johnson* factors.

### i.    Reasonable Hourly Rates

Under the lodestar approach, the first step in the analysis is to determine the reasonable hourly rate.  This is determined with respect to those rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895-96; *see also Reed*, 179 F.3d at 471.  Courts will frequently award fees based on an attorney's customary rate, because "normal billing rates usually provide an efficient and fair short cut for determining the market rate." *Dowling v. Litton Loan Servicing, LP*, No. 05-CV-098, 2008 U.S. Dist. LEXIS 31669, at *3-4 (S.D. Ohio Mar. 31, 2008) (citing *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995)).  This analysis becomes more complicated, however, where, as is generally the case here, the attorneys do not usually practice within the jurisdiction in which they seek fees.  *Compare Adcock-Ladd*, 227 F.3d at 350

18

("When a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit. . . . [T]he 'prevailing market rate' is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record, rather than foreign counsel's typical charge for work performed within a geographical area wherein he maintains his office and/or normally practices.") *with Berry v. School Dist.*, 703 F. Supp. 1277, 1283 (W.D. Mich. 1986) ("A national market or a market for a particular legal specialization may provide the appropriate market.") (citing *Louisville Black Police Officers Organization v. City of Louisville*, 700 F.2d 268, 277 (6th Cir. 1983)).[9] Regardless, as noted, the party seeking attorneys' fees bears the burden of proving the reasonableness of the hourly rates requested. *Granzeier*, 173 F.3d at 577.

Here, Plaintiffs request the following hourly rates:

---

[9]    This is not, of course, to say that the ordinary rate charged by those attorneys can not be probative.  For example, if the most highly compensated partners in Chicago charge $650.00 an hour and the most highly compensated partners in Cleveland charge $550.00 an hour, a Chicago attorney's testimony that her normal hourly rate was $650.00 an hour might strongly support a court's determination that her hourly rate for work performed in Cleveland should be $550.00 an hour.

| Organization | Name | Title | *Requested* Hourly Rate |
|---|---|---|---|
| *Brennan Center for Justice* | | | |
| | Wendy Weiser | Partner | $350.00 |
| | Renee Paradis | Counsel (2003) | $235.00 |
| | Raj Nayak | Counsel (2003) | $235.00 |
| | Margaret Chen | Administrative Assistant | $140.00 |
| | Heather McGhee | Intern | $140.00 |
| | John Infranca | Intern | $140.00 |
| *McTigue Law Group* | | | |
| | Donald J. McTigue | Partner | $450.00 |
| | Mark A. McGinnis | Associate (2003) | $250.00 |
| *Project Vote* | | | |
| | Teresa James | Counsel | $200.00 |
| *Perkins Coie* | | | |
| | Robert Bauer | Partner | $500.00 |
| | Karl Sandstrom | Of Counsel | $500.00 |
| | Marc Elias | Partner | $375.00 |
| | Scott Gingold | Associte (1998) | $250.00 |
| | Ezra Reese | Associate (2002) | $240.00 |
| | Patricia Alexander | Associate (2005) | $175.00 |
| | Kerri-Ann Anderson | Summer Associate | $155.00 |
| | Susan Cochard | Librarian | $175.00 |
| | Christopher Johnson | Summer Associate | $155.00 |
| | Lauren Lowe | Associate (2005) | $175.00 |

(Doc. 63-3.)[10]  In making these requests, Plaintiffs contend that the rates are consistent with the rates charged by attorneys with comparable litigation experience in Ohio (Doc. 63 at p. 14) and cite the attached declaration of H. Ritchey Hollenbaugh in support (Doc. 63-2).  Plaintiffs do not assert that these rates represent the attorneys' normal hourly rates, but instead explicitly note that many of the attorneys, given their extensive experience and qualifications, could command even higher rates.  (Doc. 63 at p. 14.)  Further, while Plaintiffs suggest that courts are "free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases," *Louisville Black Police Officers Org.*, 700 F.2d at 278, Plaintiffs do not argue that "out-of-town specialist" rates are being requested or were supplied to this Court, *see Hadix*, 65 F.3d at 535 (setting forth a two-part inquiry when fees are sought for an out-of-town specialist).

As an initial matter, upon a review of the requested hourly rates, the Court notes that it was somewhat concerned to realize that many of the rates requested by Plaintiffs are quite similar to the rates deemed reasonable for those practicing before courts in the District Court for the District of Columbia.  *See Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983) (establishing the

---

[10]      The Court does not include Plaintiffs' requested hourly rate for Attorney Brian Mellor from Project Vote.  As noted, *supra*, Attorney Mellor did not sign his "declaration," and the Court cannot consider his unsworn statement.  (Doc. 63-6 at p. 3.)  Because of the absence of any competent evidence regarding Attorney Mellor's requested hourly rate or the reasonableness of the number of hours he expended on the litigation, the Court cannot award Plaintiffs any fees for the time that Attorney Mellor may have reasonably spent on this matter, and this amount will be reduced from Plaintiffs' requested amount.  *See Granzier*, 173 F.3d at 577 (noting that the burden of proof is on the party seeking fees).

Similarly, the Court does not include Plaintiffs' requested hourly rate for Ellen Hepner of Perkins Coie, because Plaintiffs did not submit a biography for Ms. Hepner.  (*See* Doc. 63-4.)  Accordingly, the Court has no basis to confirm or deny the reasonableness of her requested rate.  The Court does note that, based on the billing records submitted, it appears that Ms. Hepner may be a librarian, but that cannot be confirmed.  (*Id*. at p. 20.)

"Laffey Matrix," now frequently used to determine presumptively reasonable fees in Washington, D.C.); http://www.laffeymatrix.com (last visited Mar. 30, 2009) (containing the current Adjusted Laffey Matrix); *see also Wade v. Kroger Co.*, No. 3:01CV-699, 2008 U.S. Dist. LEXIS 97200, at *31-32 (W.D. Ky. Nov. 20, 2008) (explaining that this on-line Laffey Matrix contains higher hourly rates than the Laffey Matrix maintained by the United States Attorney's Office for the District of Columbia). Although by no means dispositive, this does raise a number of flags for the Court.  Election law, of course, is a difficult and worthy field, but there is no evidence before the Court that it is one known to command abnormally high billing rates.  *See Luessenhop v. Clinton County*, 558 F. Supp. 2d 247, 261 (N.D.N.Y 2008) (noting the award of an hourly rate of $225 in a "complicated election law case" to a lawyer whose practice was described as "unique"); *cf. Bryant v. Nighbert*, No. 03-183, 2005 U.S. Dist. LEXIS 37131, at *9 (E.D. Ky. Sept. 14, 2005) ("[A] reasonable rate is one which will attract qualified and competent counsel but will not produce a windfall to the attorneys.") (citing *Northcross*, 611 F.2d at 638).

Accordingly, in light of the seemingly high hourly rates requested by Plaintiffs – particularly given the similarity of those rates to the reasonable rates for one of the most profitable jurisdictions in which to practice law – and the absence of any request for "out-of-town specialist" rates, Plaintiffs must demonstrate why their requested rates are reasonable here in the Northern District of Ohio.  *See Blackmore v. Misner*, No. 1:02-CV-33, 22005 U.S. Dist. LEXIS 25882, at *5 (W.D. Mich. Oct. 20, 2005) ("It is the burden of the attorney seeking compensation to provide 'evidence supporting the hours worked and rates claimed.'") (quoting *Hensley*, 461 U.S. at 433).

After a thorough review of the parties' submissions, the Court finds that Plaintiffs have not met their burden.  First, while the Court recognizes that Hollenbaugh's declaration is competent evidence

submitted in support of Plaintiffs' request by a well-regarded Ohio expert in fee matters, with whose work the Court is familiar, the Court notes several deficiencies with the declaration and is not fully persuaded by his opinion. For example, Defendants are correct that Hollenbaugh's declaration is vague and conclusory, asserting that he has "reviewed the attorney declarations and itemized time records submitted in support of Plaintiffs' Motion for Attorneys' Fees in this case" and that it is his opinion that "the rates set forth in each of the declarations and attachments are reasonable for the nature of the legal action and based on the varying levels of experience of the attorneys involved." (Doc. 63-2.) There is no indication exactly what declarations or attachments Hollenbaugh reviewed, and upon close inspection, the Court notes that, given that he executed his declaration on March 21, 2008 (*id.*), Hollenbaugh could not have reviewed the declarations submitted by Attorneys McTigue, Nayak, Paradis, and Weiser, which were all executed after March 21, 2008 (Docs. 63-5, 63-8, 63-9, 63-10). Further, the Court believes that Hollenbaugh's declaration does not adequately address the relevant legal inquiry: whether Plaintiffs' requested rates represent the prevailing market rates for lawyers of similar skill and reputation here in the Northern District of Ohio. Accordingly, while the Court does provide some deference to Hollenbaugh's affidavit, out of deference to this substantial experience in the area, the Court ultimately does not attach significant weight to the submission. *See Rau v. Apple-Rio Mgmt. Co.*, 1:97-CV-2345, 2000 U.S. Dist. LEXIS 20395, at *11-12 (N.D. Ga. Mar. 29, 2000) ("[T]he weight the court gives to [this] affidavit is diminished by [the affiant's] failure to … opine that the requested hourly rates of the plaintiff's attorneys are the prevailing rates for attorneys of their caliber for similar services in the Northern District of Georgia."); *Accord LeTourneau v. Pan Am Fin. Servs.*, No. 97-3543, 1998 U.S. App. LEXIS 20885, at *12-13 (7th Cir. Aug. 21, 1998) (reversing a district court who awarded fees based only on a "self-serving" affidavit attesting that such fees were

"reasonable"); *cf. Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 706 (7th Cir. 2001) (affirming a district court that lowered billing rates after concluding that a supporting affidavit was unpersuasive).

Plaintiffs also are unpersuasive in their attempt to analogize to another recent case in this district. Plaintiffs point this Court to an affidavit filed in another election law action in this district. *See Boustani v. Blackwell*, No. 06-CV-2065 (N.D. Ohio 2006). That affidavit, however, did not opine on these attorneys or this case, did not address the appropriate hourly rate for summer associates, administrative staff, or of counsel, and was not actually relied upon by that court. (*Boustani*, No. 06-CV-2065, Docs. 23-4, 41.) For these reasons, while the Court notes and carefully considers that affidavit as well, the Court certainly does not consider it binding.

Therefore, on this record, which is devoid of any evidence that Plaintiffs' requested hourly rates are reasonable in the Northern District of Ohio, that this particular case should be judged with reference to a national market or an "out-of-town specialist," or that the requested rates are what these particular attorneys ordinarily charge for their services, the Court cannot conclude that the Plaintiffs have met their burden of demonstrating that such high hourly rates are proper. In reaching this conclusion, the Court is mindful that "[t]he statutes use the words 'reasonable' fees, not 'liberal' fees." *Coulter*, 805 F.2d at 149 ("Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate."); *Robinson v. City of Edmond*, 160 F.3d 1275, 1288 (10th Cir. 1998) ("Fee-shifting statutes . . . do not permit an award of fees charged by 'the best attorneys that money can buy' if those rates exceed the prevailing market rate for similar services."); *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 947-948 (E.D. Mich. 2005) ("[Section] 1988 only guarantees civil rights plaintiffs

'competent counsel.'"). *But see Cmtys. for Equity*, 2008 U.S. Dist. LEXIS 25640, at *34 ("[E]specially in cases involving particularly complex issues . . . [a] national market or a market for a particular legal specialization may provide the appropriate market.") (citation omitted).  The Court has, accordingly, relied on its own experience; a careful review of all the parties' filings, including the declarations and submitted attorney biographies; and the Ohio State Bar Association 2007 Publication entitled "The Economics of Law Practice in Ohio" to set the appropriate hourly rates in this case.  *Accord Barrett*, 2007 U.S. Dist. LEXIS 41555, at *25-26 (consulting the State Bar Association and relying on the court's own experience in determining a reasonable fee).  As such, the Court will apply the following hourly rates[11] in this case:

---

[11]      The Court notes that it reduced the hourly rates for associates far more than for the partners with substantial relevant experience.  This litigation required specialized skills, and although these hourly rates are still quite high for the Northern District of Ohio, the Court believes that lower rates would not adequately compensate such counsel.  This rationale does not apply, however, to young associates.  While these associates have assuredly bright futures, absent supporting documentation justifying these rates, the Court has no basis to compensate them at levels so far above their peers.

| Organization | Name | Title | *Reasonable* Hourly Rate |
|---|---|---|---|
| *Brennan Center for Justice* | | | |
| | Wendy Weiser | Partner | $310.00 |
| | Renee Paradis | Counsel (2003) | $165.00 |
| | Raj Nayak | Counsel (2003) | $165.00 |
| | Margaret Chen | Administrative Assistant | $100.00 |
| | Heather McGhee | Intern | $70.00 |
| | John Infranca | Intern | $70.00 |
| *McTigue Law Group* | | | |
| | Donald J. McTigue | Partner | $400.00 |
| | Mark A. McGinnis | Associate (2003) | $175.00 |
| *Project Vote* | | | |
| | Teresa James | Counsel | $200.00 |
| *Perkins Coie* | | | |
| | Robert Bauer | Partner | $450.00 |
| | Karl Sandstrom | Of Counsel | $450.00 |
| | Marc Elias | Partner | $340.00 |
| | Scott Gingold | Associate (1998) | $175.00 |
| | Ezra Reese | Associate (2002) | $170.00 |
| | Patricia Alexander | Associate (2005) | $125.00 |
| | Kerri-Ann Anderson | Summer Associate | $70.00 |
| | Susan Cochard | Librarian | $80.00 |
| | Christopher Johnson | Summer Associate | $70.00 |
| | Lauren Lowe | Associate (2005) | $125.00 |

### ii.  Reasonable Hours Expended

Defendants have objected to the number of hours that Plaintiffs' counsel have billed, primarily on the grounds that it appears to be unreasonably duplicative.  While many of Defendants' concerns appear to be unfounded, the Court is troubled by a number of billing issues and will adjust the hours billed accordingly.

Defendants first assert that the case was "over-lawyered."  They contend, for example, that it was unnecessary to use lawyers from outside the jurisdiction.  (Doc. 67 at 12 ("Mr. McTigue and Mr. McGinnis, both Ohio attorneys, concentrate their practices on federal and state election and campaign finance law.  It would seem, therefore, that they possessed the expertise to brief this case

without reaching outside the state.").)  They also point to numerous examples that they believe

establish duplicative billing.  For example, they note that five to seven attorneys regularly

participated in conference calls, eight lawyers and one intern participated in drafting the Complaint,

and six attorneys participated in preparing for the preliminary injunction hearing.  These examples,

upon close inspection, are not particularly troubling.  This was a complex case that was litigated on

an expedited time-frame, which justifies a somewhat higher than usual number of attorneys.

Indeed, it is possible, in some circumstances, for a larger number of lawyers to be more efficient

than a smaller number of lawyers.

On the other hand, this case involved twenty-one separate time-keepers spread across four

different firms, which is an extraordinary number by any measure for a case that did not involve

formal discovery.  The Court notes that paying clients, for even the most complicated litigation,

insist on a finite number of time-keepers devoted to any particular issue or task to ensure maximum

efficiency.  The Court is aware, for example, of one Fortune 100 firm that ordinarily will allow no

more than two individuals to be involved in the actual drafting of any motion.  While the use of so

many time-keepers and law firms is not *per se* unreasonable, it raises substantial concerns where, as

here, a party seeking fees has not provided back-up documentation attesting that the work could not

have been done with less.  *Accord Ky. Rest. Concepts Inc. v. City of Louisville*, 117 Fed. Appx. 415,

419 (6th Cir. 2004) ("[T]wo law firms would have been sufficient as opposed to four.")  The Court

will, consequently, reduce the hours worked across-the-board by 10% to try and account for this

inefficiency.  *Accord id.* ("Plaintiffs are not entitled to have any number of well-qualified attorneys

reimbursed for their efforts, when fewer attorneys could have accomplished the job.") (quoting the

district court with approval); *see also Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp.

27

1017,1021 n.5, 1022 (N.D. Ohio 1997) (deducting the request by 10% across-the-board for

instances of excessive and duplicative work).

Once that adjustment is made, however, the number of hours billed by lawyers do not strike

the Court as unreasonable.  For example, one of Defendants' major concerns is that the attorneys

billed over one-hundred hours to draft their successful motion for a preliminary injunction.  (Doc.

67 at p. 5.)  Yet, this was an exceedingly complicated motion.  Contrary to Defendants' assertion,

the Court finds this a fair measure of time to bill for such complicated work.[12]

The Court does note, however, that summer associates and interns have billed a substantial

amount of time to this litigation.  It appears, for example, that one summer associate from Perkins

Coie billed fifty-eight hours drafting the motion for a preliminary injunction, which was then given

to a relatively young associate who billed another thirty-five hours drafting this motion.  As stated,

the Court finds the total attorney time devoted to this motion to be generally reasonable and does

not doubt that this summer associate added real value to that effort.  Fifty-eight hours, however, is

excessive, and the Court has similar concerns with the other summer associate on this case, as well

as the interns from the Brennan Center for Justice (*see* Doc. 67 at p. 6 ("If the work product from

the intern was such that the attorneys needed sixteen hours to rewrite it, there is no excuse for the

Brennan Center trying to bill the intern's time.)).  To account for these concerns, the Court will

halve the amount of hours billed by the summer associates and interns.

---

[12]     Defendants, for example, complain that Mr. McTigue billed 3.2 hours on the draft
even after Perkins Coie lawyers had apparently completed it.  (Doc. 67 at p. 5.)
Although the Court notes an apparent clerical error reflecting the date of the work
performed, there is nothing obviously unreasonable about this: Mr. McTigue was
the expert on Ohio law.  It would have been imprudent for him *not* to spend this
time with such a critical brief, and imprudent for the original drafters not to seek
confirmation that their positions on complicated areas of state law were
supportable.

28

The Court also notes that Defendants raise a valid concern with respect to a number of billing entries that were unrelated to the litigation.  (Doc. 67 at p. 7.)  Specifically, Defendants argue that Plaintiffs improperly attempt to bill for counsel's participation at various pre-litigation "administrative proceedings," which Defendants contend were not "reasonably necessary" to the litigation under the Supreme Court's standard set forth in *Webb v. Bd. of Educ. of Dyer County*, 471 U.S. 234, 242-43 (1985).  In response, Plaintiffs assert that the time spent by their counsel in attending these administrative hearings – which dealt with the third-party voter registration laws that were eventually challenged in this lawsuit – was reasonably necessary and cite in support *Chandler v. Vill. of Chagrin Falls*, No. 1:03-CV-2057, 2007 U.S. Dist. LEXIS 1223, at *13-14 (N.D. Ohio Jan. 5, 2007) (awarding attorneys' fees for counsel's time prior to litigation at administrative proceedings that became adversary).  Upon considering these arguments and the applicable law, the Court finds some merit to both parties' positions.  While Defendants correctly point out that Plaintiffs' counsel were not *required* to attend these hearings (*e.g.*, Plaintiffs did not have to exhaust any administrative remedies prior to filing this lawsuit), Plaintiffs' counsel's participation at the hearings was adversarial in a general sense, as the hearings took place after counsel had informed Defendants of the legal problems with the proposed interpretation of the voter registration laws and, further, was made in an attempt to avoid this litigation – certainly something the Court would encourage.  Accordingly, on this record, and in its informed discretion, the Court will halve the amount of time billed by Plaintiffs' counsel spent attending the public hearings in question, in addition to the other adjustments to Plaintiffs' fee request outlined above.[13]

---

[13]    Specifically, the Court will deduct 2.85 hours from Attorney Nayak, 1.5 hours from Attorney McTigue, and 2.15 hours from Attorney James.

29

Beyond this, however, after a careful review of Defendants' other arguments and a close inspection of Plaintiffs' counsel's bills, the Court finds that the submitted time entries were reasonable under the circumstances.[14]

Accordingly, the Court will award the following number of hours[15] for each time-keeper:

---

[14]    In this regard, the Court explicitly notes that it rejects Defendants' assertion that Attorney Paradis spent an unreasonable amount of time drafting Plaintiffs' summary judgment motion based on entries from October 2006.  (*See* Doc. 67 at p. 6.)  Plaintiffs submit that Attorney Paradis spent this time drafting much longer and more detailed motion papers, because at that point in the litigation, the case was still proceeding against then-Defendant Blackwell and that she could not have anticipated that the parties would later agree to rely on the parties' earlier briefs at the summary judgment stage. The Court notes that, as of October 2006, Attorney Paradis "believed the work to be reasonably expended in pursuit of success," and the hours in question should be awarded.  *Woolridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *overruled on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001).

[15]    The Court has rounded to the nearest whole number in the charts displayed in this opinion.  **The Court used the exact provided numbers in its calculations.**

30

| Organization | Name | Title | *Awarded* Hours |
|---|---|---|---|
| *Brennan Center for Justice* | | | |
| | Wendy Weiser | Partner | 152 |
| | Renee Paradis | Counsel (2003) | 165 |
| | Raj Nayak | Counsel (2003) | 21 |
| | Margaret Chen | Administrative Assistant | 21 |
| | Heather McGhee | Intern | 10 |
| | John Infranca | Intern | 10 |
| *McTigue Law Group* | | | |
| | Donald J. McTigue | Partner | 131 |
| | Mark A. McGinnis | Associate (2003) | 45 |
| *Project Vote* | | | |
| | Teresa James | Counsel | 35 |
| *Perkins Coie* | | | |
| | Robert Bauer | Partner | 2 |
| | Karl Sandstorm | Of Counsel | 279 |
| | Marc Elias | Partner | 4 |
| | Scott Gingold | Associate (1998) | 54 |
| | Ezra Reese | Associate (2002) | 62 |
| | Patricia Alexander | Associate (2005) | 68 |
| | Kerri-Ann Anderson | Summer Associate | 30 |
| | Susan Cochard | Librarian | 1 |
| | Christopher Johnson | Summer Associate | 19 |
| | Lauren Lowe | Associate (2005) | 1 |

### iii.    Lodestar Calculation

Therefore, based upon the above, the Court calculates the lodestar amount to be $312,925.00.  Below is a quick-reference summary chart illustrating how the lodestar amount was calculated:

| Names | Title | Requested Rate | Awarded Rate | Requested Hours | Hours After Specific Reductions | Total Awarded Hours* | Total Compensation |
|---|---|---|---|---|---|---|---|
| W. Weiser | Partner | 350 | 310 | 174 | 169 | 152 | $47,039 |
| R. Paradis | Counsel (2003) | 235 | 165 | 183 | 183 | 165 | $27,205 |
| R. Nayak | Counsel (2003) | 235 | 165 | 26 | 24 | 21 | $3,497 |
| M. Chen | Admin. Assistant | 140 | 100 | 23 | 23 | 21 | $2,106 |
| H. McGhee | Intern | 140 | 70 | 22 | 11 | 10 | $706 |
| J. Infranca | Intern | 140 | 70 | 23 | 11 | 10 | $718 |
| D. McTigue | Partner | 450 | 400 | 147 | 146 | 131 | $52,416 |
| M. McGinnis | Associate (2003) | 250 | 175 | 50 | 50 | 45 | $7,922 |
| T. James | Counsel | 200 | 200 | 41 | 38 | 35 | $6,903 |
| R. Bauer | Partner | 500 | 450 | 6 | 3 | 2 | $1,013 |
| K. Sandstorm | Of Counsel | 500 | 450 | 310 | 310 | 279 | $125,388 |
| M. Elias | Partner | 375 | 340 | 4 | 4 | 4 | $1,255 |
| S. Gingold | Associate (1998) | 250 | 175 | 60 | 60 | 54 | $9,466 |
| E. Reese | Associate (2002) | 240 | 170 | 69 | 69 | 62 | $10,618 |
| P. Alexander | Associate (2005) | 175 | 125 | 76 | 76 | 68 | $8,561 |
| L. Lowe | Associate (2005) | 175 | 125 | 41 | 41 | 37 | $4,613 |
| S. Cochard | Librarian | 175 | 80 | 1 | 1 | 1 | $72 |
| C. Johnson | Summer Associate | 155 | 70 | 43 | 21 | 19 | $1,348 |
| K.Anderson | Summer Associate | 155 | 70 | 66 | 33 | 30 | $2,079 |
| | | | | | | | $312,925.00 |

\* Hours after specific reduction, reduced by ten percent.

### iv.    The Twelve *Johnson* Factors

Having calculated the lodestar to be $312,925.00, the Court next must determine whether an adjustment should be made in light of the twelve *Johnson* factors.  *See Hensley*, 461 U.S. at 430 n.3; *Reed*, 179 F.3d at 471.[16]

Upon review, the Court initially notes that a significant number of the factors weigh in favor of potentially enhancing the lodestar.  In particular, the Court points out that the following factors suggest that Plaintiffs' counsel should be awarded a significant, if not a "fully compensatory fee":

> (1) the time and labor required by the case;
> (2) the novelty and difficulty of the questions presented;
> (3) the skill needed to perform the legal service properly;
> (7) the time limitations imposed by the client and the circumstances;
> (8) the results obtained; and
> (9) the experience, reputation, and ability of the attorneys.

*See Adcock-Ladd*, 227 F.3d at 349-50 (quoting *Hensley*, 461 U.S. at 435).  As discussed, Plaintiffs' counsel achieved "excellent results" under considerable time limitations by presenting a novel theory in a previously undeveloped area of election law.

Here, however, the Court finds that the lodestar already incorporates the twelve *Johnson* factors and ultimately represents a reasonable attorneys' fee award for Plaintiffs.  *See City of Burlington*, 505 U.S. at 562 (noting that there is "a strong presumption that the lodestar represents

---

[16]    As noted, the twelve *Johnson* factors are as follows:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Reed*, 179 F.3d at 471 n.3 (quoting *Johnson*, 488 F.2d at 717-19).

the reasonable fee"); *Hensley*, 461 U.S. at 434 n.9 (noting that the twelve *Johnson* factors "are usually subsumed with the initial calculation of hours reasonably expended at a reasonable hourly rate").  Specifically, the lodestar already amounts to a substantial fee award based at least in part on a significant time commitment by a number of attorneys, several of whom had high hourly rates attributable to their experience and other qualifications – *i.e.*, the time, labor, skill, and experience required for counsel to successfully litigate this case already have been accounted for in the lodestar calculation.  *See Adcock-Ladd*, 227 F.3d at 349 n.8 ("Some of [the twelve *Johnson*] factors ordinarily may be considered only when resolving the basic lodestar fee and thus cannot be used to augment that lodestar.").  By contrast, if Plaintiffs' counsel had accomplished the same results in such a complex and novel case on an expedited basis with fewer and less experienced attorneys, then, in that situation, an enhancement to the lodestar may have been warranted.  *See West v. Tyson Foods, Inc.*, No. 4:05-CV-183M, 2008 U.S. Dist. LEXIS 97928, at *7-11 (W.D. Ky. Dec. 3, 2008) (collecting "rare" and "exceptional" cases where courts enhanced the calculated lodestar).  In this case, the lodestar has the effect of compensating items contemplated by the twelve *Johnson* factors.

Accordingly, the Court concludes that an adjustment to the lodestar is not appropriate, and Plaintiffs are awarded $312,925.00 for attorneys' fees.

### b.    Costs

Plaintiffs also request an award of costs and expenses in the amount of $10,808.32.  As discussed above, costs and expenses that an attorney or law firm generally charge to the client are recoverable under the applicable fee shifting statutes.  *See, e.g.*, *Northcross*, 611 F.2d at 639; *Citizens Against Pollution v. Ohio Power Co.*, 484 F. Supp. 2d 800, 815 (S.D. Ohio 2007); *Hall v. Ohio Educ. Ass'n*, 984 F. Supp. 1144, 1146 (S.D. Ohio 1997).  The Court finds that most of the costs for which Plaintiffs request compensation are uncontroversial, sufficiently documented, and should be awarded as a matter of course.  Certain expenses, however, are undocumented, excessive,

or unnecessary.

### i.    Compensable Expenses

It is well established that expenses such as travel (including airfare, milage, meal, and lodging), telephone bills, shipping and postage, photocopying, filing fees, and similar items are expenses necessarily incurred in the natural course of litigation and are recoverable.  *See*, *e.g.*, *Northcross*, 611 F.2d at 639; *Sigley*, 2000 U.S. App. LEXIS 1465, at *23-26; *Cleveland Area Bd. of Realtors*, 965 F. Supp. at 1023-24 (citing *Northcross* in support of expenses recoverable under 42 U.S.C. § 1988 and *Crawford Fitting Co. v. J.T. Gibbons*, 482 U.S. 437, 441-42 (1987) for expenses recoverable under 28 U.S.C. § 1920).  Of course, such expenses are only recoverable if reasonable and adequately documented.  *See Cleveland Area Bd. of Realtors*, 965 F. Supp. at 1024.

Whether expenses for computerized legal research are recoverable is a close question. Although the weight of recent authority favors treating computerized legal research as a recoverable expense, the Sixth Circuit has not addressed this issue in a published opinion.  *See Say v. Adams*, No. 3:07-CV-377-R, 2009 U.S. Dist. LEXIS 23863, at *19-20 (W.D. Ky. Mar. 24, 2009) ("The Sixth Circuit has yet to address the issue of whether costs associated with computerized legal research are recoverable under § 1988.  However, other circuit and district courts have awarded the costs associated with computerized research.  *See Cleveland Area Bd. of Realtors*, . . . 965 F. Supp. [at] 1023 . . . (compiling cases)."); *Cmtys. for Equity*, 2008 U.S. Dist. LEXIS 25640, at *75-76 ("The Third, Seventh, Tenth, and District of Columbia Circuit Courts of Appeal have all found these costs reasonable."); *Citizens Ins. Co. of Am. v KIC Chem., Inc.*, No. 1:04-CV-385, 2007 U.S. Dist. LEXIS 73201, at *7 (reasoning that Westlaw and Lexis charges should be recoverable because they are routinely billed to clients and computerized legal research improves the quality of legal service and should be encouraged); *cf. Auto Alliance Int'l Inc.*, 155 Fed. Appx. at 228-29 (noting growing trend toward recoverability of cost of computerized legal research but affirming

denial of award of such expenses for insufficient documentation).  Furthermore, some courts exclude computerized legal research from recoverable expenses on the grounds that such research is either encompassed in the time the researching attorney billed or part of overhead.  *See United States for the Use & Benefit of Evergreen Pipeline Constr. Co., Inc. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996); *Harco, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1440-41 (7th Cir. 1994); *Standley v. Chilhowee R-IV Sch. Dist.*, 5 F.3d 319 (8th Cir. 1993); *Weinberger v. Great N. Neekosa Corp.*, 801 F. Supp. 804, 827 (D. Me. 1992).

The Court agrees with the line of recent authority finding computerized legal research recoverable.  As even some of the cases cited for the alternative holding concede, computer research ultimately reduces the number of billable hours charged to the client.

> The added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching. Therefore, we see no difference between a situation where an attorney researches manually and bills only the time spent and a situation where the attorney does the research on a computer and bills for both the time and the computer fee.

*Harco*, 38 F.3d at 1040-41.  In other words, even in *Harco*, where the court denied computerized legal research fees in the context of the cost analysis, it recognized the charges as compensable within the attorneys' fees context.  This strikes the Court as mere semantics, and, moreover, as a matter of clarity and transparency, it seems more appropriate and accurate to characterize computerized legal research charges as expenses rather than attorneys fees.  As the Sixth Circuit concluded in *Northcross*, 611 F.2d at 638-39, costs customarily passed along to the client which "aid in the effective practice of law" should be treated as reimbursable expenses under 42 U.S.C. § 1988.  *Cmtys. for Equity*, 2008 U.S. Dist. LEXIS 25640, at *76.  Westlaw and Lexis charges are just such an expense.  Moreover, because they are typically billed to the client, computerized legal research charges should not be treated as overhead.  Accordingly, the Court will award Plaintiffs their adequately documented expenses associated with computerized legal research.

Against this legal backdrop, the Court will proceed to scrutinize Plaintiffs' request for an award of $10,808.32.

First, Plaintiffs have submitted adequate documentation related to parking, travel, filing fees, docket fees, photocopying, telephone bills, postage, shipping, and computerized legal research in the amount of $9,394.20.[17]  Specifically, these expenses are supported by an affidavit or declaration of an attorney attesting to the authenticity of bills and records reflecting the reimbursements requested.  Accordingly, $9,394.20 of expenses are compensable if reasonable. The remaining $1409.39 is attributable to two sources:  (1) Attorney Brian Mellor, who requested $352.00 in travel expenses but did not sign his declaration or provide any documentation in support of the request; and (2) Attorney Elliot Mincberg, who requested $1,062.12 in expenses but did not provide *any* substantiation.  Both of these request are denied *in toto* for insufficient documentation.

Second, of the $9,394.20 in documented expenses, the Court finds that only $8,560.28 reflects the reasonable expenses incurred under the circumstances of this case.  Defendants argue that Attorney Nayak requests $643.92 in travel expenses for a trip to Ohio that occurred before the Complaint was even filed in this case.  Plaintiffs do not rebut this contention in their reply brief, and the Court finds Defendants' contention persuasive.  Defendants also compellingly argue that the Brennan Center unnecessarily filed a costly *pro hac vice* motion for an attorney who never actively litigated in the Northern District of Ohio.  This further reduces the expenses award by $190.00.

---

[17]     The Brennan Center for Justice submitted documentation in connection with travel in the amount of $643.92 for Attorney Nayak (Doc. 63-8) and $372.10 for Attorney Paradis (Doc. 63-9).  In addition, Brennan Center Attorney Weiser submitted a request for $205.64 in telephone bills (Doc. 63-10).  The McTigue Law Group submitted expense documentation in the amount of $1,676.67 in connection with travel, parking, *pro hac vice* fees, docket fees, and transcripts (Doc. 63-5).  Attorney Karl Sandstrom of the law firm Perkins Coie LLP submitted expense documentation in the amount of $6,495.87 in connection with photocopying, telephone bills, travel, postage, shipping, and computerized legal research (Doc. 68-2).

Accordingly, the Court hereby awards Plaintiffs $8,560.28 in costs.

### III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiffs' motion and concludes that Plaintiffs are entitled to **an award of attorneys' fees in the amount of $312,925.00** and **an award of costs in the amount of $8,560.28** for **a total award of $321,485.28**.

**IT IS SO ORDERED.**

*/s/Kathleen M. O'Malley*
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated:  March 31, 2009**